448 So.2d 1322 (1984)
Robert H. NAULTY
v.
OUPAC, INC., Insurance Plan of America, Inc. and State Farm Mutual Automobile Insurance Company.
No. 83-CA-688.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*1324 B. Frank Davis, Bernard, Cassisa, Babst & Saporito, Metairie, for plaintiff-appellee.
Adrianne L. Baumgartner, Porteous, Hainkel, Johnson & Sarpy, New Orleans, James P. Doherty, Jr., Andrus & Doherty, Opelousas, Diane K. Zink, New Orleans, for defendants-appellants.
Before BOWES, CURRAULT and DUFRESNE, JJ.
BOWES, Judge.
Defendants appeal from a judgment of the trial court in favor of plaintiff in the amount of $8,306.83 and against all defendants jointly and in solido. There was further judgment awarding plaintiff 12% penalties on the principal judgment and attorney's fees of $4,000.00, plus costs and legal interest. By amended judgment, the court ordered defendants, I.P.A. and OUPAC, Inc., to pay to State Farm their virile share of such penalties and attorney's fees. Finally, judgment was rendered in favor of Louisiana Power and Light Company and against all defendants, jointly and in solido, in the amount of $1,720.44.
Plaintiff answered the appeal and requested that the attorney's fees be increased.
We amend the judgment of the trial court and, as amended, affirm. Initially, we note that the amending judgment of March 11th was null. A judgment cannot be amended to alter the substance of the original judgment. CCP Art. 1951. The amendment came as a result of a motion for new trial, which motion was denied. The amended judgment was, then, not the result of the motion for a new trial, even in part. Accordingly, the judgment was improperly granted. We have based our findings on the judgment of February 8, which was valid, and the controlling judgment in the case.
The facts of the case are as follows: Plaintiff, Robert Naulty, purchased an *1325 automobile for which he sought to obtain liability and property insurance. Insurance Plan of America, Inc. (hereinafter referred to as IPA) contracted to procure a one-year policy of insurance protection providing limits of liability of $5,000 per person, $10,000 per occurrence, and $5,000 for property damage. On the application, Mr. Naulty stated that he had had one conviction for careless operation of a vehicle. He paid $200.00 as a deposit on the final premium to be computed. State Farm Insurance Company was assigned the plaintiff's policy, which was to cover the period of October 22, 1979 to October 22, 1980, at a premium rate of $785.00. The premium payments were to be financed through OUPAC, Inc.; plaintiff would pay nine monthly installments of $51.35 each for the remainder of premium due. Plaintiff also signed a document which is styled "legal power-of-attorney" and which stated:
This is to inform you that OUPAC, Incorporated financed the premium for this insurance policy/policies. I hereby irrevocably appoint OUPAC, Incorporated or its Assigns my lawful Attorney-In-Fact to deliver to you my original policy or lost policy release for cancellation of this financed policy or to request cancellation for non-payment of premium in the event of my default in premium payment to OUPAC, Incorporated and to collect all return premiums due to me, including endorsements of return premium checks. I hereby ratify any and all acts that my attorney may do or perform hereunder.
Subsequently, it was discovered by IPA that the conviction referred to by Mr. Naulty in his application was one for reckless operation, although the evidence indicates that Naulty actually thought his original disclosure was correct. Because of this information, it was determined that Mr. Naulty's premium would be increased by $182.00. On November 30, 1979, plaintiff was informed of the increase by IPA, and was also told: "Please remit your payment of $182.00 to State Farm by 12/30/79 to avoid cancellation." A "Balance Due Notice" was sent from State Farm for $182.00, notifying plaintiff that he had until December 12, 1979, to pay the added premium. Plaintiff did not send the check by that date. He testified at trial that he had agreed to pay the extra premium, but did not have the cash at that particular period of time. It should be noted that plaintiff was employed offshore and was absent from his home approximately the second two weeks of every month.
Thereafter, on December 21, 1979, plaintiff received a notice of intent to cancel from State Farm, informing Mr. Naulty that his policy would be cancelled effective July 29, 1980,[1] if the additional premium was not paid before that date. Mr. Naulty testified that he was out of town between January 16th and January 30th. On January *1326 9, 1980, OUPAC sent to State Farm the following message on Mr. Naulty's policy:
Please cancel policy for the above-mentioned as he has an additional premium and is not planning on paying it. Attached is our original power of attorney.
On January 16, 1980, State Farm issued to plaintiff a notice of cancellation effective retroactively to January 11th.[2] As luck would have it, on January 31, 1980, Ms. Rebecca Peel, a friend of Mr. Naulty, who drove the insured auto with the knowledge and permission of plaintiff, struck a telephone pole owned by Louisiana Power and Light Co., occasioning damage to Mr. Naulty's vehicle, as well as to the pole. Mr. Naulty made a claim for property damage to State Farm, who refused to pay any claims in the incident. A premium refund was later issued to Mr. Naulty.
Under these facts, Mr. Naulty brought suit against OUPAC, Inc., Insurance Plan of America, Inc., and State Farm. Louisiana Power and Light Company intervened for the damages to its property. State Farm filed a third party demand against OUPAC for indemnification of any judgment it might have to pay to Naulty. OUPAC filed a similar demand against IPA. IPA, in turn, filed still another third party suit against Ms. Peel, and later against both OUPAC and State Farm. With everyone in their respective positions, the trial began.
It was found by the trial judge, as set out in his excellent and articulate original reasons for judgment, that: There was no dispute that an error had been made in the calculation of the original premium; that Mr. Naulty had advised IPA and State Farm that he disputed the premium (due to the difference in the traffic violation tickets); that the December 22nd notice to Mr. Naulty essentially advised him that the policy period would be shortened to July 1980, and would cover the full year only after Naulty paid the extra premium, and that he had until July 1980 in which to do so. IPA also received this notice from State Farm. After IPA received this notice, it proceeded to go forward with communicating to OUPAC and advising them that Mr. Naulty had no intention of paying the additional premium, and instructed OUPAC to cancel the policy. When OUPAC was contacted by IPA, it sent the notice of January 9th to State Farm, along with the power of attorney signed by Mr. Naulty. State Farm made no effort to verify the information in that memo. The Court then found all original defendants mutually at fault for the following reasons:
The only basis for the cancellation was the letter written by OUPAC to State Farm on January 9, 1980. The enclosed power of attorney spelled out the authority given by Naulty to OUPAC. Nowhere does it state that OUPAC can cancel because of a possibility that a premium may not be paid in the future. State Farm had no legal right to cancel the policy especially after advising Naulty that he could pay the additional premium in July of 1980. It also did not have the right to retroactively cancel, the law providing a five day notice.
Although State Farm is adjudged to be culpable herein, it did not get there alone. The cancellation was a result of OUPAC's improvident request which exceeded its authority. State Farm was induced to cancel the policy by OUPAC which was responding to an improvident request by IPA. The power of attorney was created to protect OUPAC in event premiums were in default.
IPA knew from State Farm that they were not in default. IPA, which had no right to request that OUPAC exercise its rights under the power of attorney in the first place, definitely had no legal right to make said request after being notified by State Farm that the premiums were not in default.
*1327 These findings are amply supported by the record.
R. Garic Toca, president of IPA, testified by deposition that he did not know, of his own knowledge, that his agency had requested OUPAC to cancel Naulty's policy, and there were no written records to that effect. General procedure, in the event that a premium was due that the insured refused to pay, is to request the policy be cancelled, according to Toca. Steve Schrempp, an employee of IPA who handled Naulty's account, testified that he telephoned State Farm to ascertain whether or not Naulty had paid the premium. When State Farm informed him it was not paid, Schrempp said he notified OUPAC of that fact, but denied requesting OUPAC to cancel the policy.
J.E. Brignac, manager of OUPAC, testified that the agent (IPA) notified his agency that Naulty had no intention of paying and requested cancellation. He stated that he felt the agent had a right to so request because the agent would be liable for any deficiency of premium unpaid by the insured, according to their contract.[3] Brignac testified that Schrempp had told him, in a telephone conversation, that he (Schrempp) had, indeed, requested OUPAC cancel. Schrempp then admitted that such was possible.
The trial judge obviously believed OUPAC's witness, that is, that IPA did request cancellation. This was a reasonable determination based on the trial court's evaluation of credibility of the witnesses, and we find no error in it. Thus we will not disturb this finding on appeal. See Canter v. Koehring, 283 So.2d 716 (La. 1973).
Louisiana R.S. 22:1162 defines an insurance broker as "... an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent."
IPA is obviously an insurance broker. A broker must observe the same fidelity toward both represented parties, and not favor one or the other. La.C.C. Art. 3017. A broker is responsible for fault, neglect or unfaithfulness in his management. C.C. Art. 3003.
There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be an agent of the insured in procuring a policy of insurance. Karam v. St. Paul Fire and Marine Insurance Co., 265 So.2d 821 (La.App. 3rd Cir.1972) Affirmed on other grounds, 281 So.2d 728 (La.1973). See also Foster v. Nunmaker Discount Co. 201 So.2d 215 (La.App. 4th Cir.1967)
But because of the double representation the broker is a fiduciary to both parties. See Kieran v. Commercial Union Insurance Co. of N.Y., 271 So.2d 889 (La. 4th Cir.1973).
In this particular case, the relationship between IPA and Naulty was emphasized by the clause of the disclosure contract *1328 between OUPAC on the one hand and Naulty and IPA on the other, noted in footnote 3 of this opinion.
Because the extra premium due was never financed, this clause was never actually invoked. However, it is clear from the testimony that IPA feared the possibility of being liable for this deficiency, and, to avoid this contingency, requested cancellation. IPA breached its fiduciary duty to the plaintiff when it sought to bypass the contingency clause, disregarding its primary obligation to the plaintiff. IPA's action was gratuitous, since it was under no obligation to underwrite the premium which plaintiff had not as yet financed through OUPAC, and so IPA cannot attempt to claim that it was forced to act to protect its own interests. Under these circumstances, IPA is liable to plaintiff inasmuch as its action began the chain of events culminating in the plaintiff's loss of insurance protection.
When OUPAC requested State Farm to cancel Naulty's policy, it acted in excess of its power of attorney. As the trial judge pointed out, that document did not permit OUPAC to cancel because of a possibility that a premium might not be paid in the future. The power of attorney serves to protect OUPAC in case of premium default. The testimony at trial established that Naulty had made all contracted for payments timely, that he was not in default, and so the power of attorney did not become operative. Moreover, Naulty did nothing which could be interpreted as ratification of OUPAC's request. Under Civil Code Article 3010, a mandate such as OUPAC is liable for its action in exceeding its authority, whether it did so negligently or whether it was done in bad faith.
Finally, State Farm is presumed to know the contents of the power of attorney in question. A copy of that paper was sent, along with OUPAC's request. State Farm is culpable in this case because it should have been apparent to it, as it is to the courts, that OUPAC was acting outside the scope of its authority. OUPAC's authority to act as it did was not specifically in accordance with the power of attorney. The words "in default" have a very definite meaning, and the conclusion reached by OUPAC of a future failure to pay, when the plaintiff was current in his obligation, does not constitute default. The statement sent to plaintiff by State Farm dated December 21, 1979, is evidence that State Farm did not consider plaintiff as having defaulted. State Farm, under these circumstances, had an obligation to investigate the matter further, and was precluded from cancelling plaintiff's policy in the absence of Naulty's actual failure to pay.
As the trial judge found, each defendant shared a portion of the fault. They are liable jointly and in solido for the damages proven at trial.
Further, we find that State Farm was arbitrary and capricious by its action in failing to pay the claim timely. An insurer must bear the risk of interpreting its own contract and, when such interpretations are erroneous, an insurer is not relieved of the duty to pay penalties and attorney's fees. See Carney v. American Fire and Indemnity Co. 371 So.2d 815 (La.1979). State Farm is liable for the penalties and attorney's fees assessed under La.R.S. 22:658. Because IPA and OUPAC were each arbitrary and capricious, each exceeded their various authorities and failed in their respective duties toward plaintiff, they are both jointly liable for contribution to State Farm for their virile shares of these penalties and fees. See Richard v. American Federation of Unions, 378 So.2d 564 (La.App. 3rd Cir.1979) for a similar holding in that circuit. Both acted in concert with State Farm to bring about the present situation, and both contributed to the ultimate exposure of State Farm to liability. We find that the attorney's fees granted by the court were reasonable, and supported by the evidence submitted by plaintiff's counsel.
The record on appeal, including plaintiff's answer brief, does not give us any basis on which to grant additional attorney's fees. There is no statement as to *1329 time spent or work required in preparation for this appeal. Therefore, in the absence of a figure submitted by plaintiff's counsel, we are unable to increase attorney's fees.
Accordingly, the judgment of the trial court is affirmed and amended.
Appellants who were the original defendants are to pay all costs of this appeal.
AFFIRMED AND AMENDED.
NOTES
[1] The pertinent portion of that notice says:
 WE HAVE NOT RECEIVED THE FULL AMOUNT REQUIRED TO KEEP THIS POLICY IN FORCE
 FOR THE FULL TERM.
 ALTHOUGH THIS LEAVES US NO ALTERNATIVE THAN TO NOTIFY YOU OF OUR INTENT TO
 CANCEL THIS POLICY IT WILL BE PERMITTED TO REMAIN IN FORCE FOR THE PERIOD
 FOR WHICH PREMIUM HAS ALREADY BEEN PAID. THEREFORE THIS IS TO NOTIFY YOU
 THAT YOUR POLICY IDENTIFIED IN THIS NOTICE WILL BE CANCELLED EFFECTIVE
 JULY 29 1980 12:01 A.M. STANDARD TIME AND NO COVERAGE
 WILL BE IN EFFECT AFTER THAT TIME AND DATE.
 IF THIS NON-PAYMENT OF PREMIUM HAS BEEN AN OVERSIGHT PLEASE
 IMMEDIATELY FORWARD YOUR PAYMENT.

[2] The notice was checked in the following particular:

POWER OF ATTORNEY REQUESTIn compliance with a request based upon a power of attorney that you signed, this policy is cancelled as of the date and time indicated above.
[3] The disclosure statement and note signed by plaintiff by which OUPAC financed the premium stated in part:

In consideration of the payment of the balance of premiums due on the insurance policies, listed above, for the account of the insured by OUPAC, Incorporated, the Insured and the Agent, and/or Broker, jointly and solidarily, promise to pay and guarantees payment, to the order of OUPAC, Inc. the amount financed, plus finance charges at the times and in the amounts provided for in the above schedule of payments.