615 So.2d 1079 (1993)
Sally S. SMASON
v.
CELTIC LIFE INSURANCE COMPANY, et al.
No. 92-CA-1042.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1993.
Writ Denied May 21, 1993.
*1081 Alan D. Ezkovich, Raymond P. Ward, Sessions & Fishman, New Orleans, for appellants.
Stephen A. Mogabgab, Roger D. Marlow, Hulse, Nelson & Wanek, Covington, for appellee.
Before KLEES, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
The issue raised on this appeal is whether an independent insurance broker owes a fiduciary duty to disclose to the insurer information of an insured's medical condition. In the instant case the trial court held that an independent insurance broker, Guy Dussouy, was the agent of an insurer, Celtic Insurance Company, and thus owed a duty to disclose the insured's pre-existing condition, which was known to him, to the insurer. We reverse.

THE PROCURING OF HEALTH INSURANCE BY DUSSOUY:
Sally Smason opened a hair salon and desired to procure health insurance for her and her employees. In October of 1985, she contacted an old friend, Guy Dussouy, an independent insurance agent, and asked that he procure health insurance for her and her business. At this time Smason was pregnant.
Dussouy initially contacted Regan & Associates for the requested insurance. Dussouy received their applications and brought them to Smason. On November 27, 1985, these applications were filled out by Smason and her employees and a first month's premium check accompanied the application to Regan & Associates. Regan rejected the group policy because Smason was pregnant. Dussouy claims that he related this information to Smason. Smason, however, testified that she was under the impression that she was covered by health insurance from December 1, 1985.
Early in December of 1985, Smason noticed a lump in her throat. It was negatively tested for mononucleosis. On December 27, 1985, Smason saw Doctor Leon who wanted to perform a needle nose biopsy on the lump. However, due to the structure of the lump this was impossible. He then scheduled her for a surgical biopsy *1082 on January 2, 1986. Smason testified that later that evening she called Dussouy and told him about the lump and her scheduled surgical biopsy. She testified that this was her first contact with Dussouy since November 27, 1985.
The next day, December 28, 1985, Dussouy brought Smason more applications and returned her premium check claiming that he had found a better deal for her health care coverage. During the interim period between November 28, 1985 and December 28, 1985, Dussouy had contacted Celtic Life Insurance Company through their registered agent Levy & Associates which agreed to extend health insurance to Smason and her employees. He denies that he ever spoke to Smason about the lump in her throat on December 27, 1985.
Smason filled out the Celtic application. The following three questions were on the application:
1. [] Yes [] No Are any applicant(s) currently pregnant, or have they been counselled or advised that they have or may have any disease, disorder, impairment, deformity, injury, or any chronic or untreatable condition whether active or in remission?
2. [] Yes [] No Have any applicant(s) had medical or surgical consultation, advice, or treatment (including medication) for any condition(s) during the past 24 months?
4. [ ] Yes [ ] No Have any applicant(s) ever been treated for, or been counselled or advised, that they have had or may have had a heart condition, stroke or other circulatory disorder, ulcers, cancer or tumors (benign or malignant), high blood pressure, diabetes, mental or nervous disorder, drug addiction, alcoholism, or emphysema?
Smason testified that she asked Dussouy how she should fill out these questions and he purportedly stated that she should answer them the same way she had answered them on the prior application to Regan & Associates. Where asked if she was pregnant or had a pre-existing condition she checked "yes." Where asked if she had had any surgical consultation, advice or treatment recently, she left the box blank. The applications were completed by Smason and her employees on December 28, 1985. Dussouy returned December 30, 1985 and picked up the applications and the premium checks.
The policy was to go into effect on January 1, 1986, as long as the paper work was returned to Celtic by January 10, 1986. On January 2, 1986 a surgical biopsy was performed on Smason. Dr. Leon stated that the lump "looked suspicious" but was unable to fully diagnose Smason's condition. Smason spoke to Dussouy about the biopsy on January 2, 1986. On January 3, Dussouy delivered the applications to Levy (Celtic's agent). Dussouy did not disclose Smason's condition to Levy or any other person involved with Celtic Life Insurance Company. On January 6, 1986, Smason was diagnosed as having Hodgkin's Disease, a cancer of the lymph nodes.

CELTIC'S ACTIONS:
Because Dussouy delivered the paper work to Celtic prior to January 10, 1986, the effective date of the policy was January 1, 1986. Smason underwent radiation treatment and her bills totaled $45,474.26. Celtic refused payment.
Smason first realized that Celtic refused to pay her claims in a letter dated April 24, 1986, which stated that Celtic was investigating her claim. In a letter dated June 6, 1986, Celtic informed Smason that it was rescinding her coverage effective retroactively to the date of inception. Smason appealed this decision through Celtic's appeal process.
On August 13, 1986, Celtic informed Smason that it was denying her appeal. The letter indicated that Celtic was denying the appeal because it determined that Smason had misrepresented information on her application. Celtic claimed that Smason had answered "no" to the questions concerning pregnancy, prior consultation and whether she had been diagnosed as having cancer. Apparently, Celtic never examined her application because on her application Smason answered (1) "yes," (2) "blank," and (4) "no."

*1083 TRIAL COURT ACTIONS:
Smason sued Celtic and Dussouy to recover the expense of her medical bills. Celtic cross-claimed against Dussouy. Touro Infirmary intervened seeking $16,000 for services rendered. Prior to trial, Celtic entered into a Mary Carter agreement wherein Smason settled its claim against Celtic for $80,000, and agreed to continue her suit against Dussouy. Any amounts she collected from Dussouy were to be reimbursed to Celtic. It was also agreed that $16,000 of this amount was to go to Touro Hospital for its services.
At trial, the court held Dussouy liable to Celtic for the $80,000. The court held that Dussouy was Celtic's agent and owed a duty to disclose Smason's condition on January 3, 1986. Failure to do so caused Celtic $80,000 in damages which Dussouy must reimburse. Additionally, the trial court held Dussouy liable to Touro Infirmary for $16,000. No reasons for this judgment were rendered. Dussouy appeals both of these judgments.

TOURO'S INTERVENTION:
Touro's $16,000 worth of services to Smason is undisputed. The trial court held Dussouy liable to Touro for $16,000, notwithstanding that the settlement agreement provided that Smason would pay Touro from the amounts she received from Celtic.
Dussouy argues that Touro has no right of action against him. Touro agrees and seeks to have the judgment modified to hold Smason liable to Touro for $16,000 and that Dussouy is liable to Smason. We agree with the defendant that Touro has no right of action against him.
We need not decide whether the terms of the settlement agreement affect the judgment of the trial court on this issue because it is clear that a third party does not have a right of action against an insurance broker for failing to procure insurance for someone from whom the third party had a right to recover. LeBouef v. Colony Ins. Co., 486 So.2d 760 (La.App. 1st Cir.1985); Oliver v. Natchitoches Air Center, 506 So.2d 558 (La.App. 3rd Cir.1987), writ denied, 507 So.2d 220 (La.1987). Touro, as a third party, therefore, has no right of action against Dussouy. Therefore, the judgment holding Dussouy liable to Touro is reversed. There will be judgment in favor of Touro against Smason in the sum of $16,000 plus legal interest and costs.

DID DUSSOUY OWE A DUTY TO DISCLOSE TO CELTIC?
Dussouy argues that generally one does not have a duty to disclose information absent special circumstances such as the existence of a fiduciary relationship. Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La.1992). Celtic does not disagree with this assertion, but argues that "special circumstances" do exist in this case such that this court should find that Dussouy owed Celtic a fiduciary duty to disclose as either an agent or a broker.

AGENCY:
Dussouy denies that he was the Celtic's agent. Celtic, on the contrary, argues that Dussouy was indeed their agent.
Celtic cites Tiner v. Aetna Life Insurance Co., 291 So.2d 774 (La.1974) wherein the Supreme Court found that an agency relationship existed in that case which is factually similar to the instant case. Thus, Celtic asserts that Dussouy should be held to be its agent under Tiner.
In Tiner, an insurance agent for Equitable wrote health insurance policies for Aetna because Equitable did not carry health insurance. The plaintiffs sought health insurance from the agent. The agent arrived at the couples house with Aetna forms and the couple gave him the necessary information. The policy was issued and 21 months later Aetna refused coverage claiming that the insured supplied incorrect information in the application. As it turned out, the information given by the plaintiffs was truthful but the agent decided that it was unimportant and deleted it from the application. The issue in the case was whether the agent of Equitable was also the agent of Aetna such that Aetna would be bound by the agent's knowledge. The Supreme Court held that the Equitable agent was also Aetna's agent. The Court restated the principle that whether a broker in any particular *1084 transaction acts as an agent of the insurer, such that the insurer is bound by the broker's actions or knowledge, is a question of fact dependant on the particular circumstances of the case.
Celtic argues that Tiner is essentially the same as the instant case. Celtic notes the similarities: 1) The plaintiff sought insurance from the defendant in both cases. 2) The plaintiff, as in Tiner, did not care with whom the agent placed the insurance. 3) Celtic appointed Dussouy as its agent. 4) The agent in both cases brought applications and forms of the insurance companies to the plaintiff. 5) The agent in both cases helped the plaintiff fill out the forms. 6) The forms in both cases were processed in the same manner as would forms received from a registered agent.
In Tiner the Supreme Court stated:
Thus, the decision is not authority for any hard-and-fast rule that a broker may never be an agent of an insurer from whom he secures a policy for an insured. It is, rather, only an illustration of the general principle that, whether a broker in any particular transaction acts as an agent of the insured or of the insurer, is a question of fact dependent on the particular circumstances of the case. 3 Couch on Insurance 2d, Sections 25:95, Sections 26:152, 153 (1960)
Tiner, 291 So.2d at 778. Therefore, we must examine the facts surrounding the instant case to determine whether Dussouy was the agent of Celtic in this particular case.
Although Celtic is correct when it argues that an insurance broker may be found to be the agent of the insurer in a particular case, one does not presume the existence of an agency relationship. There must exist facts which give rise to the reasonable inference that an agency relationship has been entered into.

Direct Relationship:
One factor the Supreme Court noted for finding that the insurance broker in Tiner was Aetna's agent was that "[a] broker who procures insurance which is accepted and issued by an insurance company pursuant to application forms, furnished to the broker by the company, is considered the agent of such company in the issuance of the policy." 3 Couch on Insurance 2d, Sec. 26:25 (1960). (Emphasis ours.) The agent in Tiner acquired forms directly from Aetna because he had a direct relationship with them. There were no other agents through which he acted. In the instant case, Dussouy obtained the necessary forms through Levy, Celtic's agent, not through Celtic directly. All paperwork was transmitted thorough Celtic's agent Levy. Therefore, there was no direct connection between the company, Celtic, and the broker, Dussouy.

Agent in Fact:
In Tiner the agent only wrote health insurance policies with Aetna. The forms presented to the plaintiffs were Aetna's and apparently no other company was ever considered. In the instant case, not only did Dussouy not consider Celtic initially for the coverage, he in fact contacted another insurance company through Regan & Assoc. He presented applications from this company to Smason and the company later rejected the applications. This activity took place prior to any consideration being given to Celtic writing the policy. Clearly, in Tiner, the agent was Aetna's agent in fact although perhaps not named as a registered agent. However, Dussouy was not in the same capacity with regards to Celtic. Thus, Dussouy was not an agent in fact for Celtic.

Ongoing/Prior Relationship:
There was no prior relationship between Dussouy and Celtic. Dussouy had never contacted Celtic except for the policy under consideration. Celtic had never before contacted Dussouy to represent it in any transaction. Clearly, there was no ongoing or prior relationship between Dussouy and Celtic.
In Tiner, however, the Equitable agent wrote all of his health insurance policies with Aetna and had done so repeatedly. He used no other companies to write health insurance policies. In other words, he had an ongoing, prior relationship with Aetna.

*1085 Control:

Perhaps the most important aspect missing in this purported agency relationship is the element of control. As the Second Circuit noted in Boyter v. Blazer Construction Co., Inc., 505 So.2d 854, 861 (La. App. 2nd Cir.1987), "[t]he issue of whether a person is an agent or a broker depends mainly on control." Neither Dussouy nor Celtic had any semblance of control over the other. Dussouy dealt only with Celtic's agent Levy. While Levy had the power to bind Celtic, Dussouy did not have such power. Additionally, Celtic had no power to control or order Dussouy to do anything.

Dussouy Appointed As Agent By Celtic:
Celtic argues that it appointed Dussouy as its agent thus there is no question as to Dussouy's status as its agent. However, Dussouy claims that this "appointment" was a unilateral act on the part of Celtic in order for him to be eligible to receive commissions from Celtic. Celtic's Vice President, Tom Stead, testified that Celtic can only accept business from an appointed agent as a matter of State law. Thus, in order for Dussouy to be able to do business with Celtic and receive commissions he was appointed as an agent. Dussouy claims that he never asked to be appointed.
Stead also testified that there was an appointment but no agreement. He said that Dussouy would have had to initiate it but could not show any evidence that Dussouy in fact did so.
Obviously, it is unclear who initiated the appointment of Dussouy as an agent and whether or not it was a unilateral, routine decision on the part of Celtic without Dussouy's consent. In order for the appointment to be considered in determining whether Dussouy was Celtic's agent, there must be some evidence which shows that the appointment was consensual on both sides. No such evidence exists. Therefore, the question of appointment is not determinative nor persuasive on this issue.

Smason's Belief:
Celtic asserts Smason thought that Dussouy was Celtic's agent. Therefore, Smason's belief should be considered as a factor in determining Dussouy's status as an agent. We disagree. A principal/agent relationship is determined from the facts surrounding the two parties involved. We do not consider the subjective belief of a third party to determine whether or not an agency relationship exists between two different parties. Smason's belief might be relevant to whether Dussouy was indeed her agent but not to the question of whether he was Celtic's agent.
In light of the preceding facts, clearly no agency relationship existed between Dussouy and Celtic. The facts which gave rise to an agency relationship in Tiner do not exist in the instant case. In fact, this case is devoid of any facts from which one could infer an agency relationship between the insurance broker and the insurer. Therefore, the trial court's finding that Dussouy was an agent of Celtic is reversed. However, a finding that Dussouy wasn't an agent of Celtic is not dispositive of finding that he owed no duty to disclose information to Celtic. The duty may arise in another context.

BROKER:
Celtic argues that even if Dussouy is not an agent he still owed a duty to disclose because as a broker he owed a duty to treat both parties fairly. As support for this assertion Celtic cites Civil code articles 3003, 3017 and 3018 as well as Neustadter v. Bridges, 406 So.2d 738 (La. App. 4th Cir.1981); Naulty v. Oupac, Inc., 448 So.2d 1322 (La.App. 5th Cir.1984); Breaux v. Insured Lloyds, Inc. Co., 515 So.2d 453, 454 (La.App. 3d.Cir.1987).
La.C.C. art. 3016 defines a broker as "he who is employed to negotiate a matter between two parties, and who, for that reason, is considered a mandatary of both." La.C.C. art. 3017 states that, as a mandatary of both, the broker should observe the same fidelity towards all parties and not favor one more than the other. Thus, if Dussouy is a broker under the Civil Code he owed a fiduciary duty to the insurer to disclose the information.
In addition, the cases Celtic cites do state that an insurance broker owes a fiduciary *1086 duty to both parties. In Neustadter, this court stated that "an insurance broker has a fiduciary responsibility to the insured as well as the insurer and is liable for his own fault and neglect." 406 So.2d at 741. In Naulty, citing another Fourth Circuit case Kieran v. Commercial Union Ins. Co., 271 So.2d 889 (La.App. 4th Cir.1973), the Fifth Circuit stated that "because of the double representation the broker is a fiduciary to both parties." 448 So.2d at 1327.

DISTINCTION BETWEEN "INSURANCE BROKER" AND CIVIL CODE BROKER:
Although there are cases which state an "insurance broker" under the Civil Code owes a fiduciary duty to both parties those cases make an overly broad statement of the existing law. An "insurance broker" is generally considered to be the representative of the insured. It is only in those situations where facts exist such that one can infer an agency relationship between the insurance broker and the insurer that the insurance broker is deemed to be representative of both parties. In this situation, the articles pertaining to "broker" in the Civil Code become applicable.
This distinction between an "insurance broker" and a "broker" under the Civil Code is readily seen when one analyzes the existing statutory law and jurisprudence.
The Insurance Code, LA R.S. 22:1162, states the following:
§ 1162 Broker Defined
An "insurance broker" is hereby defined to be an individual, partnership, or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent. The broker is deemed for all purposes to be the representative of the insured.

The underlined sentence was added by amendment in 1988. However, it merely clarifies the meaning of the original statute which clearly stated that an insurance broker is the insured's representative and not the insurer's. This is in distinction to the definition of an insurance agent.
LA R.S. 22:1161 provides the following:
§ 1161 Agent Defined
An insurance agent is hereby defined to be an individual who is a resident of this state, or whose principal office is in this state, or a partnership the members of which are residents of this state or have their principal office in this state, or a corporation having by its charter the power to act as an insurance agent and whose principal office is in this state, and whose officers and principal stockholders are residents of this state, authorized in writing by any insurer lawfully authorized to transact business in this state, to act as its representative with authority to solicit, negotiate and effect contracts of insurance in its behalf ... (emphasis ours)
Clearly, from the language of the insurance code there exists a distinction between an insurance broker, who represents the insured, and an insurance agent, who represents the insurer. The Attorney General agreed with this distinction when it issued its opinion 89-264 which states "[t]he difference between an insurance agent and an insurance broker is the identity of the principal; the agent represents the insurance company whereas the broker represents the insured."
Additionally, the Third Circuit in Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La.App. 3d Cir.1972), affirmed 281 So.2d 728 (La.1973) stated:
There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker is considered to be the agent of the insured in procuring a policy of insurance. Foster v. Nunmaker Discount *1087 Company, 201 So.2d 215 (La.App. 4th Cir.1967); Security Transfer Company v. Insured Lloyds Company, 225 So.2d 284 (La.App. 4th Cir.1969). (emphasis ours)
See also Boyter, supra 505 So.2d 854, 860.
As the preceding authorities recognized, the insurance code creates a presumption that an insurance broker is the representative of the insured and an insurance agent is the representative of the insurer. The insurance code is sui juris and prevails over any other provisions of law of general application. Succ. of Feist, 274 So.2d 806 (La. 4th Cir.1973). Additionally, the general maxim applies that the more specific law controls where there is a conflict between a general law and a specific law.
Because the insurance code presumes that an insurance broker is the representative of the insured and not a representative of both parties, clearly the provisions of the Civil Code relating to a "broker" as a mandatary for both parties are inapplicable where one is dealing strictly with an "insurance broker." Therefore, generally an insurance broker owes no fiduciary duty to the insurer as being a mandatary for both parties. The same reasoning applies to the insurance agent's duty to the insured. Generally, an insurance agent's duty is to the insurer and he will not be held to owe any fiduciary duty to the insured.

The Jurisprudence:
That an insurance broker owes no duty to an insurer may be seen more easily when one views the relationship between the insurer and the insurance broker from the perspective of the insurer. Insurers have argued countless times, in their attempts to escape liability in a given case, that the insurance broker who issued the policy to the insured was not its agent. Thus, the insurer could not be bound by any actions or representations made by the insurance broker. See Gulf Wide Towing, Inc. v. Associated Ins. Managers, Inc., 563 So.2d 432 (La.App. 1st Cir.1990), writ denied 567 So.2d 107; Ford v. Golemi, Albrecht Ins., 522 So.2d 1283 (La.App. 5th Cir.1988); Ackel v. Mid-South Underwriters, Inc., 377 So.2d 496 (La.App. 3rd Cir. 1979). While these cases make it clear that the insurer is not bound by the acts or representations of the insurance broker the corollary to this rule is that an insurance broker owes no fiduciary duty to the insurer.
In Sorapuru v. Jeffers, 378 So.2d 524 (La.App. 4th Cir.1979), the insurance broker failed to process the insured's applications thus the insured was not covered. The insured sued both the broker and the insurer to recover the amount of the premium he had paid to the broker. This court stated that "[a]bsent our finding Jeffers (the insurance broker) acted as an agent for the insurer, there is no basis for holding Louisiana Farm Bureau Company (the insurer) liable." Thus, this court recognized the aforementioned principle that without some sort of relationship between the insurance broker and the insurer neither party is bound to the other. In Sorapuru this court found that there existed facts from which one could infer an agency relationship between the insurer and the insurance broker. Thus, we found the insurer liable for the premiums paid by the insured to the insurance broker.
This analysis is consistent with the Supreme Court's decision in Tiner v. Aetna Life Insurance Co., supra, 291 So.2d 774. As noted earlier the insurance broker in Tiner had an ongoing, direct relationship with Aetna. Thus, it was reasonable to hold that the broker was also the representative of the insurer. The Court stated that "while the statutory definitions of agent, broker or solicitor, may determine what sort of license, prerequisites, or examination is required it is not determinative of whether, in a given instance, a broker or solicitor may not also serve as an agent of the insurer." (Emphasis ours.) Clearly, the Supreme Court recognized that there exist factual situations which take the broker or agent outside of their normal capacities as representatives of only one party and make them the representatives of both parties. It is this situation where *1088 the provisions of the Civil Code, applying to a mandatary of both parties, (i.e. a broker under the Civil Code) applies.

INSURANCE BROKER'S DUTY TO THE INSURED
There are a line of cases which hold that an insurance broker owes a duty to the insured because, as a broker under the Civil Code, the insurance broker owes fiduciary duty to both the insured and the insurer. See Foster v. Nunmaker Discount Company, 201 So.2d 215 (La.App. 4th Cir.1967); Board of Trustees, Etc. v. St. Louis Fire and Mar. Ins. Co., 306 So.2d 777 (La.App. 4th Cir.1974); Foster v. American Deposit Insurance Co., 435 So.2d 571 (La.App. 3rd Cir.1983). A typical example of these cases is Naulty v. Oupac, Inc., at 448 So.2d 1322 (La.App. 5th Cir. 1984). In Naulty an insurance broker requested cancellation of an insured's policy because the insured had failed to pay premiums on time. However, it was clear from the case that the insured was not obligated to pay the premiums at that time. Therefore, the insurance broker's request to cancel was a breach of its fiduciary duty to the insured.
The Fifth Circuit stated that an insurance broker owes a duty of fidelity to both the insured and the insurer relying on the Civil Code articles covering "brokers." However, they did not actually apply this rule to the case before them because the case dealt with an insurance broker's duty to the insured and not to both the insured and insurer. In holding that the insurance broker owed a fiduciary duty to the insured, the court recognized that LA-R.S. 22:1162 provided that an insurance broker is the representative of the insured. Additionally, the court cited the language from Karam, supra 265 So.2d 821 which also recognized that absent special circumstances the insurance broker is the representative of the insured. Therefore, there was no need to find that the insurance broker owed a duty to both parties because the only issue was whether the insurance broker owed a fiduciary duty to the insured and clearly it did.
In Neustadter v. Bridges, 406 So.2d 738 (La.App. 4th Cir.1981), this court held that an insurance broker was responsible to the insured for its representations that the insured was covered prior to the policy going into effect. This court stated that an insurance broker has a fiduciary responsibility to both the insured because as a broker under the Civil Code the insurance broker owed a duty to both the insured and the insurer. However, as in Naulty, supra, this language was unnecessary in determining the duty owed by an insurance broker to the insured which is covered by the insurance code.
The preceding cases are only incorrect in that they rely upon the Civil Code as the source of an insurance broker's duty to the insured. This duty is already encompassed in the definition of an insurance broker under the insurance code. Thus, because the insurance code is the more specific provision it controls. It is only in those cases, such as in Tiner and Sorapuru, where facts exist from which one can infer an agency relationship between the insurance broker and the insurer or between the agent and the insured that the codal articles pertaining to "broker" are applicable.
Clearly, under the facts of this case, Dussouy is an independent "insurance broker." Therefore, the insurance code presumes that he represents the insured. As such he owed no duty to disclose Smason's medical condition to the insurer absent sufficient facts to determine that he was in an agency relationship with the company. Such facts do not exist in this case therefore he owed no fiduciary duty to Celtic as an agent or a broker under the Civil Code.

POLICY CONSIDERATIONS:
Clearly, this holding is not intended to immunize insurance brokers from liability for every act which affects the insurer. However, relating to the issue of medical disclosure, the principal duty to disclose relevant information is on the insured. The broker is merely the intermediary. The insurer is in a superior position with its investigative resources to inquire into all relevant facts concerning the insurable risk *1089 and has the underwriting experience and standards to accept or reject all applications for insurance.
Furthermore, no harm is occasioned on the part of the insurer by imposing the duty of medical disclosure on the insured rather than the broker. The insured is required and expected to disclose all pertinent information on the application for insurance. If it is discovered that false or misleading information has been given or that material information has been omitted from the application, which did not occur in the instant case, the insurer's recourse of canceling the policy or denying the claim remains as a valid defense to any claims.

CONCLUSION:
The judgment of the trial court finding Dussouy liable for failing to disclose Smason's medical condition to Celtic is reversed. There will be judgment in favor of Touro Infirmary against Sally Smason in the sum of $16,000 plus legal interest and costs. All costs of these proceedings are assessed against the appellees.
REVERSED
LOBRANO, Judge, concurs.
I concur in the result reached by the majority, but disagree with their reasoning.
Celtic's claim against Dussouy, the broker, should be rejected simply because Celtic, through its own negligence, failed to properly inspect the application. Had it done so, the policy would have been rejected or, at the least, further inquiry would have been made. The facts establish that Celtic's refusal to pay Smason's claim was predicated on the misbelief that she answered "no" to the first question when, in fact, she answered "yes".
However, I strongly disagree with the majority's holding that a broker has no fiduciary duty to the insurer. The majority's reliance on the definitions in the insurance code, rather than the obligations of a broker imposed by the Civil Code, is misplaced.
First, La.R.S. 22:1161 (definition of agent) and R.S. 22:1162 (definition of broker) appear in the section of the Insurance Code entitled "Qualifications and License Requirements For Brokers and Agents Other Than Life." After defining the agent and broker, the remaining provisions of that section detail the licensing and educational requirements of each, as well as penalties and fines for violating those requirements. I do not believe it was the legislature's intent in adopting this section to restrict the obligations and duties imposed by the Civil Code.
For example, despite the definition in R.S. 22:1161, numerous cases have recognized the fiduciary duty of an agent to the insured as well as the insurer. See, Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973). I see no difference with respect to a broker's fiduciary duty to the insurer as well as the insured. The reason for the dual obligations of both broker and agent is simple. The agent, on behalf of the insurer, sells insurance to the insured, making a fee on the premium. The broker, on behalf of the insured, buys insurance from the insurer making a commission on the premium. In both instances the agent and broker are in the business of acquiring insurance for a fee paid by the insurer. Public policy would demand fair dealing in the transactions. The agent should not be able to misrepresent to the insured the "fine print" of a policy, and then claim to be only the insurer's agent with no duty to the insured. And, the broker should not be able to fraudulently procure insurance from the insurer, then claim to be the insured's representative with no duty to the insurer.
I believe the majority ignores the premise that a fiduciary duty is dependent on the relationship of the parties. I would not ignore the provisions of the Civil Code. To do so would sanction the intentional concealment by a broker of facts which he knows would cause the insurer to reject a policy application.
Although the result of this case is correct, in my opinion, the majority reasoning *1090 is too restrictive and ignores well established law.