690 So.2d 858 (1997)
Angela Armstrong HICKEY and Shawn Edward Hickey, Plaintiffs-Appellants,
v.
CENTENARY OYSTER HOUSE, et al., Defendant-Appellee.
No. 29221-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1997.
Rehearing Denied March 27, 1997.
*859 W. Eugene Golden & Associates by Huey L. Golden, Shreveport, for Plaintiffs-Appellants.
Bodenheimer, Jones & Szwak by David A. Szwak, Shreveport, for Defendant-Appellee Colony Insurance Company.
Joe Clark, Sr., Metairie, for Defendant Melvin Ashley d/b/a Security Professionals.
Before MARVIN, C.J., and WILLIAMS and PEATROSS, JJ.
MARVIN, Chief Judge.
In this personal injury action, arising out of an attack on a customer by an armed robber in the parking lot of a Shreveport restaurant, Angela Armstrong Hickey appeals the trial court's grant of summary judgment in favor of Colony Insurance Company, the liability insurer for Melvin Ashley d/b/a Security Professionals of Shreveport, Inc., which provided security for the restaurant and its customers. The summary judgment dismissed plaintiff's claim against Colony based upon the "assault and battery" exclusion in the liability policy.
We discern that the public policy stated in the purpose of the Private Security Regulatory and Licensing Law and the requirement that private security agencies have liability insurance overrides the assault and battery exclusion. We reverse and remand for further proceedings. La.R.S. 37:3270 et seq.

FACTS
On October 1, 1994, Hickey and a group of friends were leaving the Centenary Oyster House ("Centenary") at or near closing time after an evening of drinking and socializing. Hickey agreed to drive some friends home in Greg Teal's car because Teal was intoxicated. Teal's car was parked near the building in Centenary's back parking lot. Shelly Veuleman and Dr. Margaret Olmedo accompanied Hickey and Teal through an alleyway to the parking lot.
As the group stood next to Teal's car and Hickey was about to unlock the driver's-side door, a robber wearing a ski mask and armed with a .45 caliber handgun approached the car from the passenger side. The armed robber ordered Veuleman and Olmedo, who were standing next to the passenger side of the car, to surrender their purses. As Veuleman *860 gave over her purse, Olmedo, who had no purse, raised her hands and lay face down on the pavement.
While unlocking the door on the driver's side of the vehicle, with Teal beside her, Hickey did not immediately notice the robber. When Hickey opened the door the car's inside light automatically illuminated. The light apparently startled the robber, who aimed and fired the gun at Hickey about five times through the passenger side window. Two bullets struck Hickey in the upper torso. The robber then fled on foot and has not been apprehended. Our resolution of this appeal affects only the defendant liability insurer who insured the security agency that contracted to provide security for the restaurant and its patrons. We do not consider in this appeal the liability of the insured.

DISCUSSION
Louisiana law requires that each private security company carry at least $100,000 in general liability insurance, with the State of Louisiana named as an additional insured. La.R.S. 37:3276(E). Ashley secured liability insurance through James Nichols at Nichols Agency, Inc, Ashley's regular insurance agent. Nichols procured the insurance through McIntyre and Associates, Colony's managing general agent. According to Ashley, although he did not read the policy, he understood that Nichols gave him "the type of coverage needed for a security company."
After suing Centenary, Centenary's liability insurer, Reliance Insurance Company, Ashley and Colony, Hickey settled with Centenary and Reliance. The remaining defendants in this action are Ashley and Colony.
Colony relies on the "assault and battery" exclusion from coverage contained in its liability policy. After oral argument on the motion for summary judgment, the trial court deferred ruling until the supreme court rendered its opinion in Ledbetter v. Concord General Corp. Following the ruling in Ledbetter, 95-0809 (La. 1/6/96), 665 So.2d 1166, the trial court again heard argument on the motion and granted summary judgment.
Finding no genuine issue of material fact, the trial court ruled that Colony was not bound by any alleged representations of coverage to Ashley by Nichols because no agency relationship existed between Nichols and Colony. Although the court deemed it unnecessary to rule on the issue, the trial court specifically found the exclusion did not offend public policy, as argued by Hickey.
On appeal, Hickey urges this court to find an agency relationship between Nichols and Colony, such that Nichol's alleged representations of coverage to Ashley would bind Colony, and that the assault and battery exclusion in the Colony policy defeats the purpose of La.R.S. 37:3276(E) and is against statutorily declared public policy.

Standard of Review
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can properly be resolved within the framework for a motion for summary judgment. La.C.C.P. art. 966; Nelson v. Ragan, 26,724 (La.App. 2d Cir. 4/5/95), 653 So.2d 185, writ denied.
La.C.C.P. art. 966 was amended in 1996, effective May 1, 1996, to provide that summary judgment procedure is now favored, "designed to secure the just, speedy, and inexpensive determination of every action,... and shall be construed to accomplish these ends." The amendment is procedural in nature and, therefore, retroactive in application. La.C.C. art. 6; Collinsworth v. Foster, 28,671 (La.App. 2d Cir. 9/25/96), 680 So.2d 1275.
Art. 966 still specifies, however, that the burden of proof shall remain with the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Notwithstanding the amendment to Art. 966, if the mover fails to show that no genuine issues of material fact remain, summary judgment is not proper. Collinsworth v. Foster, supra.
*861 Is Colony bound by Nichols' representations of coverage?
We address whether Colony is bound by Nichols' alleged representations to Ashley concerning what insurance coverage was being provided to Ashley, and Ashley's resultant belief that he was covered by the liability policy for this incident. The issue is whether Nichols was an insurance agent of Colony, the insurer, soliciting risks and effecting insurance as a representative of Colony, or merely an insurance broker, soliciting insurance from various insurers as a representative of Ashley, the insured. See and compare Alexander v. Lee, 612 So.2d 1024 (La.App. 2d Cir.1993).
Hickey argues that Nichols acted as Colony's insurance agent and Colony is bound by Nichols' representations that Ashley was obtaining all the insurance coverage required by La.R.S. 37:3276. In support of her argument, Hickey emphasizes that Nichols advertised in the yellow pages that it was a "multi-line agency" with "immediate binding" available. Hickey also relies on Nichols' deposition testimony that his agency was a broker for some insurance companies, but an agent for others, and that an ordinary client could not tell whether Nichols was acting as an agent or broker.
Contending that a trial on the merits is needed to fully investigate the alleged principal/agent relationship between Nichols and Colony, Hickey argues that Nichols' representations to Ashley and Ashley's understanding of the terms of the policy that he was buying have not yet been fully explored because Ashley's deposition was interrupted and has not been completed.
Whether an insurance broker, in a particular transaction, acts as an agent of the insured or the insurer is a question of fact, dependant on the particular circumstances of the case. Tiner v. Aetna Life Insurance Company, 291 So.2d 774 (La.1974). The existence or non-existence of an agreement between an insurer and an intermediary is not necessarily dispositive of the issue. Britten v. Payne, 381 So.2d 855 (La.App. 1st Cir. 1980), writ denied. A principal/agent relationship is never presumed. There must exist facts which give rise to the reasonable inference that an agency relationship has been entered into. Smason v. Celtic Life Ins. Co., 615 So.2d 1079 (La.App. 4th Cir. 1993), writ denied. This record is devoid of any facts from which one could infer an agency relationship between Nichols and Colony.
This record clearly establishes that Nichols operated as an independent insurance agency, soliciting applicants for insurance from the general public to forward to different insurers or their general agents. Nichols had no written agency contract with Colony, had no authority to issue coverage on behalf of Colony, to make any alterations, changes or additions to any insurance policy issued by Colony, or to make any binding commitments on behalf of Colony.
There was no direct connection between Nichols and Colony, as indicated by the following exchanges from James Nichols' deposition testimony:
Q. Okay. And can you tell me about your relationship, if any, to Colony Insurance Company or the Waite Hill Insurance Group?
A. The only relationship I have with them is indirectly through McIntyre and Associates, the managing general agent. I don't have any direct contractual or any other relationship with Colony.
* * * * * *
Q. And in this case, it's been your testimony that you are not an agent of Colony Insurance Company, but you were brokering a policy through McIntyre and Associates?
A. That's correct.
This court has noted that the issue of whether a person is an agent or a broker depends mainly on control. Boyter v. Blazer Construction Co., Inc., 505 So.2d 854 (La.App. 2d Cir.1987). Neither Nichols nor Colony exercised any control over the manner or procedures followed by the other in conducting their respective businesses.
Hickey argues that Ashley was unable to determine if Nichols was Colony's agent. Ashley's understanding or belief, however, is not a factor in determining Nichols' status as *862 an agent. A principal/agent relationship is determined from the facts surrounding the two parties involved, without considering the subjective belief of a third party. Ashley's understanding may be relevant to whether Nichols was his agent, but not to the question of whether Nichols was Colony's agent. See Smason v. Celtic Life Ins. Co., supra.
On this record we conclude Nichols acted as an independent insurance broker and as agent for Ashley, not for Colony. Any alleged misrepresentations by Nichols to Ashley concerning the liability coverage cannot be imputed to Colony. No genuine issue of material fact on this issue is present.

The Assault & Battery Exclusion
As a contract between the parties, an insurance policy should be construed employing general rules of interpretation of contracts set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La. 1/14/94), 630 So.2d 759; Jefferson v. Monumental General Ins. Co., 577 So.2d 1184 (La.App. 2d Cir.1991). An insurer is entitled to limit its liability and to impose and to enforce reasonable conditions upon the policy obligations it contractually assumes, unless the limitation is contrary to public policy. Louisiana Ins. Guar. Ass'n, supra; our emphasis.
The policy exclusion at issue in this appeal reads:
This insurance does not apply to damages or expenses due to Bodily Injury, Property Damage or Medical Expenses ... arising from:
A) Assault and Battery committed by any insured, any employee of any insured, or any other person, whether or not committed by or at the direction of any insured,
B) The failure to suppress or prevent assault and battery by a person in A) above,
C) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery,
D) The negligent hiring, supervision or training of any employee of the insured in A) above,
E) The use of any force to protect persons or property whether or not the bodily injury or proeprty [sic] damage was intended from the standpoint of the insured or committed by or at the direction of the insured.
Ashley d/b/a Security Professionals of Shreveport, Inc., as a private contract security company, is subject to the mandatory requirement of La.R.S. 37:3276(E):
E. The licensee shall be required to have in effect general liability insurance of at least one hundred thousand dollars with the state of Louisiana named as an additional insured and shall provide to the board a certificate of insurance issued by the carrier.
We emphasize the stated legislative purpose of the Private Security Regulatory and Licensing Law is set forth in Section 3270:
A. The Legislature of Louisiana declares that it is necessary to require the licensure of private security agents and businesses to be in the best interest of the citizens of this state.
B. The purpose of this Chapter is to require qualifying criteria in a professional field in which unqualified individuals may injure the public. The requirements of this Chapter will contribute to the safety, health, and welfare of the people of Louisiana.

(Our emphasis.)
The statute generally requires private security agents to be "professional[ly] qualified" and licensed and insured for liability in the best interest of the citizens of the state. The statute is couched in terms of protecting "the safety ... of" and guarding against "injur[y]" to the public. The statute recognizes *863 that a private security guard, especially one not statutorily qualified, may injure the public. The legislature does not qualify the cause of the contemplated injury of a citizen as either intentional or negligent. We shall not provide the qualification, but shall consider that the legislature intends to protect the public against injury, however caused, in part or wholly, by an "unqualified" [unprofessional] private security guard.
Liability insurance required by law in such a circumstance is written not only for the protection of the insured, but for the protection of citizens who may suffer injury caused, partly or wholly, by the insured. Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976); Young v. Brown, 27,018 (La.App. 2d Cir. 6/21/95), 658 So.2d 750, writ denied.
We discern the purpose of the statute in requiring licensed private security guards to have liability insurance is to protect citizens who may suffer injury caused, either intentionally or negligently, by a private security guard. It is not inconceivable that a licensed and armed private security guard may intentionally or negligently shoot a citizen or that a robber threatening a citizen, whose "safety" the guard is responsible for guarding or protecting, might intentionally shoot a citizen. In either instance, where legal responsibility might attach because of particular circumstances, to allow the required liability policy to exclude "assault and battery" coverage would defeat the purpose of requiring such insurance of the licensed security guard who fails in the responsibility.
A liability insurer who writes the required coverage for a private security company may not, by a policy provision, narrow the liability coverage reasonably contemplated and required by the statute.
From time to time courts of this state have similarly voided liability policy provisions that were in derogation of compulsory insurance laws in the context of automobile insurance coverage. See, e.g., Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La. App. 2d Cir.1983), writ denied; Earl v. Commercial Union Insurance Company, 391 So.2d 934 (La.App. 2d Cir.1980); Stanfel v. Shelton, 563 So.2d 410 (La.App. 1st Cir. 1990); Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir.1988). The ultimate coverage of such compulsory insurance is dictated from time to time by the legislature. Statutes may impose coverage obligations on the insurer that are beyond the ordinary insurance agreement or contract in some specified circumstances.
We recognize that Louisiana courts have routinely considered and upheld similar "assault and battery" exclusions from coverage in other contexts. See, e.g., Ledbetter v. Concord General Corp., 95-0809 (La. 1/6/96), 665 So.2d 1166; Cortinez v. Handford, 490 So.2d 626 (La.App. 2d Cir.1986); Taylor v. Duplechain, 469 So.2d 472 (La.App. 3d Cir. 1985), writ denied; Alvarado v. Doe, 613 So.2d 166 (La.App. 4th Cir.1992), writ denied.
One case has considered the exclusion in the context of the Private Security Regulatory and Licensing Law which requires such liability insurance. In Jackson v. Rogers, 95-0486 (La.App. 1st Cir. 11/9/95), 665 So.2d 440, the court considered a liability policy issued to a private contract security company which contained an assault and battery exclusion similar to the one involved in this appeal. Jackson v. Rogers held that the assault and battery exclusion from coverage was an allowable limitation of liability, not prohibited by public policy or statute. The court stated that the insurance policy in that case "met all requirements of La.R.S. 37:3276(E) and the Insurance Code." The court in Jackson v. Rogers simply stated that the policy in question "met all requirements of" the statute because it had the appropriate liability limits and named the state as an additional insured, but did not discuss or mention the expressly stated legislative purpose, of protecting the safety, health and well being of the people of Louisiana, whose safety may be contractually undertaken by a private security agency licensed under the Private Security Regulatory and Licensing Law.
Notwithstanding the Jackson holding by our colleagues on the First Circuit, we discern the legislative policy from the statute as applied to the circumstances of this particular case. Under the circumstances of this *864 case, the assault and battery exclusion violates the statute.

CONCLUSION
A liability insurer of a private security agency, licensed under the law, who contractually assumes the responsibility of guarding the safety of persons and protecting such persons against injury from those who would intentionally attack and rob them, may not avoid statutory liability because of the assault and battery exclusion in the liability insurance policy if the insured under the liability policy causes, partly or wholly, the injury to the person.

DECREE
The summary judgment, at Colony's cost, is REVERSED. The case is remanded.