680 So.2d 140 (1996)
Dorothy MICHELET
v.
SCHEURING SECURITY SERVICES INC., Aetna Casualty Company and James Grant, Jr.
No. 95-CA-2196.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1996.
*142 Richard L. Ducote, Fine & Associates, New Orleans, for Plaintiff/Appellant, Dorothy Michelet.
Martin A. Stern and Janis Van Meerveld, Adams and Reese, New Orleans, for Defendant/Appellant, Scheuring Security Services, Inc.
Richard P. Ieyoub, Attorney General and M. Chadwick Pellerin, Assistant Attorney General, New Orleans, for Defendant/Appellant, Louisiana State Board of Private Security Examiners.
Joseph L. Spilman, III, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, for Third-Party Defendant/Appellee, First Mercury Syndicate, Inc.
Before BARRY, LOBRANO and JONES, JJ.
BARRY, Judge.
Dorothy Michelet and Scheuring Security Services, Inc. (SSS) appeal summary judgments granted to First Mercury Syndicate (FMS) which dismissed Michelet's claim for damages and SSS's third party claim for failure to defend. The Louisiana State Board of Private Security Examiners, another defendant, also appeals. FMS answers the appeals and requests all costs for the *143 proceedings and dismissal of the Board's appeal.
According to her petition Michelet was resident manager of the Coliseum Place Apartments and SSS had a contract to provide security. James Grant was an SSS guard on duty when he kidnapped Michelet on March 19, 1993 at approximately 12:20 a.m. He battered her with a heavy pipe, locked her in her car's trunk, forced her to withdraw $400 from a bank teller machine, threatened to kill her, and abandoned her after a six hour ordeal. Michelet sued Grant and SSS. She alleged that SSS was vicariously liable as Grant's employer and negligent in its screening and supervision of employees and for failure to respond to her complaints about Grant. In an amendment she additionally alleged SSS's negligence relating to the number of guards, location, specified rounds, and the arming of guards. Michelet added the Louisiana State Board of Private Security Examiners (Board) as a defendant alleging its failure to investigate and prevent Grant from working as a private security guard because of his criminal background and for its failure to warn SSS not to employ Grant as a guard. SSS answered that Grant's actions were not within the scope of his employment and third partied FMS, its insurer which did not provide a legal defense. In an amended petition Michelet added FMS as a defendant. FMS filed exceptions of no cause and no right of action and alternatively motions for summary judgment as to SSS's third party demand and Michelet's petition. The exceptions were overruled and summary judgments granted.
In support of the motions for summary judgment FMS attached: excerpts from the criminal proceedings against Grant for attempted second degree murder, second degree kidnapping and armed robbery; Michelet's petition and amendments, and a copy of SSS's insurance policy (DOL 167828). FMS argued that Grant's criminal conduct was not an "occurrence" under the policy and was not within the course and scope of Grant's employment. FMS also contended that various exclusions in the policy denied coverage.
In opposition Michelet submitted a number of exhibits: excerpts from the policy; Grant's "application for security officer" which showed his 1990 arrest for discharging a firearm and the State Police printout showing the 1990 arrest and a three year sentence in 1992; notice of commencement of the Chapter 11 bankruptcy of SSS; the policy's assault and battery amendatory endorsement; errors and omissions endorsement to include payment of damages for bodily injury, personal injury or property damage; an excerpt from 18 La.Reg. 189 (2/20/92), § 201E(6), which provides that to be licensed as a security company, a certificate of general public liability insurance ($25,000) naming the State as an insured must be provided. She filed a supplemental opposition and attached: SSS's bid proposal to Coliseum Place Apartments; the contract between SSS and Coliseum Place; and Grant's July 25, 1990 arrest register for illegally carrying and discharging a weapon. Michelet argued that the exclusions were void because they were ambiguous and repugnant to Louisiana law and public policy.
In opposition SSS argued that genuine issues of material fact remain as to FMS's breach of the insurance contract and attached a copy of its third party demand. SSS claimed that FMS's policy provided coverage because Michelet alleged its negligence in screening, investigating, and supervising its employees as well as its vicarious liability, and there was coverage under the assault and battery amendatory endorsement, which included Grant's actions or was ambiguous and should be interpreted against FMS. SSS also argued that the jurisprudential interpretation of "occurrence" and "accident" supports a finding of coverage. The record does not contain an opposition to FMS's summary judgment motion filed by the Board.
On appeal Michelet and SSS argue that genuine issues of material fact remain as to the allegations of SSS's direct negligence. SSS claims that FMS had a duty to defend under the allegations even if the policy is ultimately held not to provide coverage; what happened to Michelet was an "occurrence" and the exclusions conflict with the endorsements. Michelet contends that the exclusionary provisions are ambiguous, conflicting *144 or they violate statutory law or public policy.

SUMMARY JUDGMENT STANDARD
La.C.C.P. art. 966 has recently been amended by 1996 La.Acts. 1st Ex.Sess.Act No. 9 to provide:
A.(1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.
It is not clear how this amendment affects a mover's initial burden because the content of La.C.C.P. art. 966(B) did not change. Prior jurisprudence held that all doubts were resolved against a summary judgment, whereas now a summary judgment is favored. La.C.C.P. art. 966(A)(2). The article as amended, effective upon the governor's signature, declares that the burden of proof remains with the mover. La.C.C.P. art. 966(G). However, a summary judgment will be granted against an adverse party who fails to establish the existence of proof of an element essential to his claim and on which he will carry the burden of proof at trial. La.C.C.P. art. 966(C).
Appellate courts have reviewed and will continue to review summary judgments de novo. Under the old and amended versions of the article, a motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).

INSURED
SSS's commercial liability policy with FMS must be considered in light of the arguments relating to coverage and exclusions. SECTION (I)(a) of the policy provides:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... The "bodily injury" or *145 "property damage" must be caused by an "occurrence".
SECTION (II) provides:
Each of the following is also an insured:
(a) Your employees, other than your executive officers, but only for acts within the scope of their employment by you.
In the trial court FMS argued that Grant was not an insured under the policy because his criminal actions did not fall within the scope of his employment. That phrase has been held to be equivalent to "course and scope of employment." Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983) writ denied, 441 So.2d 765 (La.1983). An employee's actions are within the course and scope of his employment if the conduct in question is "so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." Fallon v. Sullivan, 94-1927 (La.App. 4 Cir. 2/23/95), 650 So.2d 1232, 1235, writ denied, 95-0769 (La.4/28/95) 653 So.2d 601, quoting LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974).
Specific conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the servant. Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990). Considerations as to whether the tort occurred on employer premises and during working hours are relevant. The fact that the predominant motive of the servant is to benefit himself does not prevent the act from being within the scope of employment. Ermert, 559 So.2d at 477, quoting Miller v. Keating, 349 So.2d 265, 269 (La.1977).
Factors to be considered are whether the tortious conduct was: (1) primarily employment rooted; (2) reasonably incidental to the performance of the employee's duties; (3) occurred on the employer's premises; and (4) occurred during hours of employment. Samuels v. Southern Baptist Hospital, 594 So.2d 571 (La.App. 4th Cir.1992), writ denied 599 So.2d 316 (La.1992). A nursing assistant has been held to be within the scope of his employment when he sexually assaulted a mental patient on the premises of a psychiatric unit while he was on duty. The nursing assistant's tortious conduct was reasonably incidental to the performance of his duties although totally unauthorized by his employer and motivated by his own personal interest. Id at 574. In Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979), where a uniformed, armed police officer on duty who used his position of authority to separate the victim from her companions and force her to engage in intercourse and oral sex, was found to be within the scope of his employment. See also Cheatham v. Lee, 277 So.2d 513 (La.App. 1st Cir.1973), writ denied 279 So.2d 696 (La. 1973); Bourque v. Lohr, 248 So.2d 901 (La. App. 3rd Cir.1971). But see Fallon, 650 So.2d at 1235, where a bartender was not within the scope of his employment when he set a fire on another floor of the lounge where he worked.
Grant, who was placed in a position of trust, abused his authority as a security guard when he attacked Michelet. There are genuine issues of material fact as to whether he was within the scope of his employment with SSS. If Grant were within the scope of his employment, FMS's policy provisions clearly exclude coverage.

ENDORSEMENTS AND EXCLUSIONS
The policy contains a number of amendatory endorsements, limitations and restrictions. The policy provides in part:

SECTION ICOVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

2. Exclusions.
This insurance does not apply to:
a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*146 COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

2. Exclusions.
This insurance does not apply to:
a. "Personal injury" or "advertising injury":
* * * * * *
(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured....
SECTION V(9)DEFINITIONS declares: "`Occurrence' means an accident...." However, the policy's ASSAULT AND BATTERY AMENDATORY ENDORSEMENT (460007-GL (12/88)) modifies the insurance to provide: "It is agreed that Assault and Battery is deemed to be an occurrence as defined in this policy."
An endorsement entitled SPECIAL LIMITATION (CVX-GL-0505(1/89)) provides:
Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that this insurance shall not apply to any claim, demand or suit alleging damages arising out of actual or alleged theft, burglary, robbery, mysterious disappearance, inventory shortage or inventory shrinkage whether caused, aggravated or exacerbated by:
1. Acts or omissions committed by you or by any person for whom you may be or are alleged to be legally responsible, including but not limited to your employees, servants, agents or
2. Acts committed by known or unknown third parties.
This exclusion applies to any claim, demand or suit seeking damages arising out of an actual or alleged theft, burglary, robbery, mysterious disappearance, inventory shortage or inventory shrinkage which claim, demand or suit advocates any theory of liability, whether sounding in tort or in contract, including but not limited to contractual assumption of liability, negligent hiring or hiring practices, negligent training or negligent supervision.
It is the intent of this endorsement to exclude from this insurance all claims, demands or suits as above described. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.
This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
The following is an exclusion added to the original policy:

EXCLUSION

PUNITIVE OR EXEMPLARY DAMAGES CRIMINAL ACTS, DECEPTIVE OR FRAUDULENT TRADE PRACTICES

(CVX-GL-0312 (10/90))
Notwithstanding anything to the contrary contained in the policy to which this endorsement attaches, or any endorsement scheduled on the declarations of this policy, or any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to:
A. "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged
`criminal act,' or
deceptive or fraudulent trade practice, or
violation of the Racketeering Influenced and Corrupt Organization Act or any similar act, whether Federal, State or Municipal, or
unfair business practice, trade practice or similar activity:
1. by any insured; or
2. by any employee of any insured; or
3. by any person or entity for whom any insured is legally liable; or
4. arising out of, caused by, or related to the employment practices of any insured including, but not limited to, negligent *147 hiring, negligent hiring practices, negligent training, or negligent supervision; or
5. arising out of and in the course of, or as a consequence of, employment by any insured; or
6. arising out of and in the course of, or as a consequence of, association with any insured.
This exclusion applies:
(a) whether any insured may or may not be liable as an employer or in any other capacity; and
(b) to any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising Injury."
"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.
B. Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages.
It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit. This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
An insurance policy is a contract between parties and should be construed according to contract principles. Smith v. Matthews, 611 So.2d 1377 (La.1993). When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, the courts lack the authority to alter or change the terms of the policy under the guise of interpretation. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. In interpreting insurance contracts the judicial responsibility is to determine the parties' common intent. Such intent is to be determined according to the ordinary, plain and popular meaning of words used in a policy. La.C.C. arts.2045 and 2047; Breland v. Schilling, 550 So.2d 609 (La.1989). The liability under a comprehensive liability policy is only as provided in the policy and the attached endorsements. The parties are free to select the types of risks to be covered. First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc., 600 So.2d 898 (La.App. 4th Cir.1992), writ denied, 608 So.2d 169 (La. 1992).
A policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict the provisions beyond what the parties contemplated. "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Louisiana Insurance Guaranty Association, 630 So.2d at 763. Ambiguity must be resolved by construing the policy as a whole. Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988). Ambiguous or equivocal provisions which seek to narrow the insurer's obligations are construed against the insurer. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La. 1991). Michelet claims that the endorsements and exclusions are ambiguous, conflicting or unenforceable as against public policy. She points to the endorsement which states that assault and battery is an occurrence, but notes that other exclusions/endorsements exclude criminal or intentional acts.
There is no direct conflict between those provisions. Because the policy defines occurrence as an accident, an amendatory endorsement was necessary for a battery, an intentional act, to be an occurrence. A security *148 guard's job could encompass conduct that constitutes assault and battery, a tort as well as a criminal act. The endorsement made battery an occurrence (otherwise defined as an accident). It did not declare that the policy covered assault and battery. That endorsement does not conflict with or discount the clearly worded provisions which exclude coverage for bodily injury arising out of actual or alleged criminal acts or the willful violation of a penal statute. The insurer and insured agreed to those provisions which are not against public policy. Assault and battery is considered an occurrence; however, if the conduct is criminal or violates a penal statute, it is excluded from coverage. The clear language of FMS's policy must be construed as written.
There are two policy exclusions stating that the insurance does not apply to bodily injury arising out of or relating to the insured's employment practices including negligent hiring and practices, training, or supervision. They also declare that FMS has no duty to defend or investigate those claims. Although the duty of an insurer to defend is broader than the question of liability, when an exclusion is applicable as a matter of law, there is no duty to defend. Crabtree v. Hayes-Dockside, Inc., 612 So.2d 249 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La.1993).
Grant's criminal actions, armed robbery, second degree kidnapping, and attempted second degree murder, are clearly excluded from FMS's policy. The policy does not apply to Michelet's claims as to SSS's direct negligence in the hiring and supervision of its security guards. Summary judgment as to Michelet's claims was properly granted.
The policy excludes bodily injury arising out of SSS' alleged direct negligence relating to hiring and supervision as well as Grant's criminal actions. Its provisions declare that FMS owed no duty to defend those claims. Summary judgment as to SSS's third party demand was properly granted.

ANSWER TO APPEAL AND THE BOARD'S APPEAL
FMS answered the appeals and requests all costs of the proceedings in the trial court and the appellate court. The trial court has great discretion in awarding costs below and may render judgment for costs against any party as it considers equitable. La.C.C.P. art. 1920; Amato v. Office of Louisiana Commissioner of Securities, 94-0082 (La. App. 4 Cir. 10/3/94), 644 So.2d 412, writ denied, 94-3024 (La. 2/3/95), 649 So.2d 410, cert. denied, ___ U.S. ___, 115 S.Ct. 2582, 132 L.Ed.2d 832 (1995). We find no abuse of that discretion and no basis to award FMS costs of this appeal. That request is denied.
FMS also requests dismissal of the Board's appeal because the Board asserted no claim against FMS and no judgment was rendered against the Board. Michelet claimed that the Board was negligent for failure to investigate and enjoin Grant from working as a security guard and for failure to warn SSS not to employ Grant as a guard. FMS argues that Michelet's claims against the Board did not relate to FMS at all and the Board did not have sufficient interest to intervene in Michelet's petition or SSS's third party demand. The Board notes that it was an additional insured under the FMS policy (statutorily required under La.R.S. 37:3276(E)) and was allowed to argue at the hearing on the summary judgment motions (according to FMS over its objection because the Board had not filed an opposition to the motion).
The Board also filed a "Motion to Amend Answer" (referring to its answer filed in the trial court) in this Court. The Board sought to amend its answer to claim indemnity against FMS. This Court denied the motion on February 8, 1996.
Procedurally, this is an unusual situation where the Board did not third party FMS or have its claim against FMS dismissed when summary judgment was granted; however, the Board filed an appeal and makes arguments relating to the interpretation of the policy. FMS did not file a motion to dismiss the Board's appeal, the proper procedure, but objected to the Board's appeal in its answer to appeal.
Any party to a suit may appeal to have a trial court judgment revised, modified, set aside or reversed by an appellate court. La. *149 C.C.P. art. 2082 and its official revision comment (c); Hicks v. Somers, 577 So.2d 299 (La.App. 4th Cir.1991), writ denied, 580 So.2d 671 (La.1991). The Board was a named defendant and an additional insured under the FMS policy and could have sued FMS for indemnity. This Court denies FMS's request for dismissal of the Board's appeal.
The Louisiana State Board of Private Security Examiners makes arguments similar to those of SSS and Michelet. It contends that the policy contains ambiguous provisions and the assault and battery endorsement conflicts with the criminal act exclusions, arguments discussed above. The Board also argues that the licensees are required to provide insurance and name it as an insured because the intent is that the public have protection against a security service's negligent hiring and intentional acts of a security guard. However, La.R.S. 37:3276(E) requires only "general liability insurance of at least one hundred thousand dollars." The Board accepted the FMS policy as compliance under the statute and licensed SSS. The Board's arguments have no merit.
The summary judgments are affirmed.
AFFIRMED.
JONES, J., dissents with reasons.
JONES, Judge, dissenting.
Having reviewed the various portions of the insurance policy issued by First Mercury Syndicate to Scheuering, I am unable to say that the policy unambiguously excludes coverage for the incident forming the basis of the plaintiff's claim. More specifically, it is apparent that although general language in the policy seems to exclude coverage for most intentional criminal acts, the policy contains a separate endorsement wherein the insurer specifically states "It is agreed that assault and battery is deemed to be an occurrence as defined in this policy."
Because of the above mentioned provision, I am unable to state that no genuine issue of material fact exists as to coverage. It is a distinct possibility that the policy could be interpreted to cover the tragic circumstances that Mrs. Michelet underwent. Moreover, if the majority is correct in determining that the policy excludes bodily injury arising out of Scheuering's negligence relating to hiring and supervising Grant, as well as Grant's criminal actions, it is difficult to imagine why Scheuering paid a $20,000 annual premium for insurance for its security guards' activities.
I believe there are several genuine issues of material fact which precluded the granting of summary judgment. Accordingly, I respectfully dissent.