719 So.2d 421 (1998)
Angela Armstrong HICKEY and Shawn Edward Hickey
v.
CENTENARY OYSTER HOUSE, et al.
No. 97-C-1074.
Supreme Court of Louisiana.
October 20, 1998.
David A. Szwak, Bodenheimer, Jones & Szwak, Shreveport, for Applicant.
W. Eugene Golden, Huey L. Golden, Joseph M. Clark, Shreveport, for Respondent.
LEMMON, Justice.[*]
This is an action brought by the patron of a restaurant to recover damages sustained when she was shot by an unknown assailant during an armed robbery in the parking lot. Defendants include a private security company, who provided security at the restaurant, and the security company's general liability insurer. The case is before this court in the pre-trial stage to resolve a conflict between the circuits on whether the extremely broad assault and battery exclusion in the general liability insurance policy issued to a private security company conflicts with the public policy of protecting the public from unqualified security agents set out in the Private Security Regulatory and Licensing Law, La. Rev.Stat. 37:3270-3298.

Facts
On October 1, 1994, plaintiff and a group of friends were socializing at the Centenary Oyster House. Upon leaving shortly before closing time, the group proceeded to Centenary's rear parking lot, where plaintiff began unlocking the car she was to drive. An *422 armed robber wearing a ski mask approached the group on the passenger's side of the car and demanded the purses of the two women standing on that side. At the same time, plaintiff opened the door on the driver's side, illuminating the inside car lights and apparently startling the robber. The robber responded by firing his gun at plaintiff through the passenger window and shooting her with two bullets. This suit followed against, among others, (1) Centenary; (2) Melvin Ashley d/b/a Security Professionals of Shreveport, the company that provided security for Centenary at the restaurant; and (3) Colony Insurance Company, who issued Ashley a commercial general liability insurance policy.
Colony filed a motion for summary judgment, urging lack of coverage based on the assault and battery exclusion in the policy. Plaintiff opposed the summary judgment on several bases. As to the pertinent contention, plaintiff argued that the assault and battery exclusion removed from coverage almost every injury for which a security company would be liable to a person whose injury was caused solely or partially by the negligent or intentional act or omission of an employee of the security company. Relying on the requirement in La.Rev.Stat. 37:3276E that a private security agent must have in effect a general liability insurance policy with specified minimum limits in order to maintain its license, plaintiff further argued that an insurance policy with such pervasive exclusions did not comply with the statutory requirement and was against public policy.
The trial court granted the motion for summary judgment and dismissed Colony from the action.
The court of appeal reversed. 29,221 (La. App.2d Cir.2/26/97); 690 So.2d 858. The intermediate court held that the public policy stated in La.Rev.Stat. 37:3270, which sets forth the purpose of the Private Security Regulatory and Licensing Law, and the statutory requirement of liability insurance as a prerequisite to the licensing of a security agent override the assault and battery exclusion in the insurance policy issued by Colony. Noting the legislative intent to protect the public against negligent or intentional injury caused by an unqualified private security agent and to require insurance coverage for such an injury, the court concluded that the assault and battery exclusion defeats the purpose of requiring a private security agent to provide liability insurance. The court further reasoned that the Legislature had dictated compulsory insurance beyond an ordinary insurance contract and held that a "liability insurer who writes the required coverage for a private security company may not, by a policy provision, narrow the liability coverage reasonably contemplated and required by the statute." 29,221 at p. 8; 680 So.2d at 863.
On Colony's application, we granted certiorari, 97-1074 (La.6/20/97); 695 So.2d 1339, to address the public policy issue and to resolve the conflict between the decision by the court of appeal in this case and the decisions in Jackson v. Rogers, 95-0486 (La.App. 1st Cir.11/9/95); 665 So.2d 440, and Michelet v. Scheming Security Services, Inc., 95-2196 (La.App. 4th Cir.9/4/96); 680 So.2d 140, cert. denied, 96-2419 and 96-2429 (La.12/13/96); 692 So.2d 371, 372.

Private Security Law
The purpose of the Private Security Regulatory and Licensing Law, which generally regulates private security agents, is stated in La.Rev.Stat. 37:3270, as follows:
A. The Legislature of Louisiana declares that it is necessary to require the licensure of private security agents and businesses to be in the best interest of the citizens of this state.
B. The purpose of this Chapter is to require qualifying criteria in a presently unregulated professional field in which unqualified individuals may injure the public. The requirements of this Chapter will contribute to the safety, health, and welfare of the people of Louisiana.
The Act generally provides for a board of examiners, who examine and investigate applicants and issue licenses, and for qualifications of licensees. A licensee is specifically required to carry general liability insurance *423 in a specified minimum amount,[1] and an armed security guard is required to have a firearm permit issued by the state. The Act also provides detailed rules regarding training, uniforms, and license fees and renewals. Overall, the Act is a detailed licensing scheme for the profession of private security agents.
Other states, in the exercise of their police power, have adopted similar statutory schemes. John C. Williams, Annotation, Regulation of Private Detectives, Private Investigators, and Security Agencies, 86 A.L.R.3d 691 (1978); see, e.g., Ohio Rev.Code Ann. § 4749.03 (requiring, among other things, that a licensee maintain liability insurance coverage in a specified minimum amount). The purpose and goal behind these enactments is "to provide regulation for, and raise the standards of, private investigators," "`to legitimatize and professionalize' the private security business and to `drive the crooks out of the industry.'" Comment, Reality and Illusion: Defining Private Security Law in Ohio, 13 U. Tol. L.Rev. 377, 386 n. 38 (1982). Stated otherwise, these enactments set minimal standards to weed out "crooks, rapists, and burglars from upstanding career security professionals." Julie Brienza, Guards Offer Protection but Pose Potential Liability Problems, 30 Trial 12, 13 (Aug.1994). The requirement of general liability coverage is simply one aspect of the qualifying criteria required to obtain a license.

Assault and Battery Exclusions
A general liability insurance policy is not intended to cover injuries arising from intentional acts. Lee R. Russ and Thomas F. Segall, 7 Couch 3d on Insurance § 101:22 (1997). Nonetheless, liability policies generally contain specific exclusions from coverage for bodily injuries which are intentionally inflicted. William Shelby McKenzie and H. Alston Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 164 (1986). Some policies contain an express exclusion for assault and battery, which has been held effective regardless of whether the insured was a participant in the altercation. Id. Assault and battery exclusions have become commonplace in policies issued to operators of bars, restaurants and similar businesses with a party atmosphere to expressly exclude such acts from coverage. Kimberly J. Winbush, Validity, Construction, and Effect of Assault and Battery Exclusion in Liability Insurance Policy at Issue, 44 A.L.R.5th 91 (1996).
Louisiana courts have routinely upheld assault and battery exclusions in other contexts. See Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96); 665 So.2d 1166, which upheld the validity of a policy provision excluding coverage of an innkeeper's liability for the rape of a guest by an unknown assailant whose entry into the guest's room was facilitated by the innkeeper's failure to repair a defective lock.[2]See also Eric Mills Holmes, 4 Holmes' Appleman on Insurance 2d § 23.4 (1998) (noting "[i]ncreasingly, policies are excluding coverage for assaults and batteries" and citing cases enforcing such exclusions). The question presented here is whether the status of the insured as a private security agent, as opposed to an innkeeper or other type of business enterprise, warrants a different result, at least as to this particular exclusion which provides:
This insurance does not apply to Bodily Injury or Property Damage arising from:
A) Assault and Battery committed by any insured, any employee of any insured, or *424 any other person, whether or not committed by or at the direction of any insured,
B) The failure to suppress or prevent assault and battery by a person in A) above,
C) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery,
D) The negligent hiring, supervision or training of any employee of the insured in A) above,
E) The use of any force to protect persons or property whether or not the bodily injury or proeprty [sic] damage was intended from the standpoint of the insured or committed by or at the direction of the insured.
Plaintiff contends that such a pervasive assault and battery exclusion in a general liability insurance contract issued to a private security agent to fulfill its statutory licensing requirement is not in harmony with the public policy espoused by the Act of protecting the public from unqualified security agents.

Public Policy
The court of appeal in this case, agreeing with plaintiff's public policy argument, reasoned:
We discern the purpose of the statute in requiring licensed private security guards to have liability insurance is to protect citizens who may suffer injury caused, either intentionally or negligently, by a private security guard. It is not inconceivable that a licensed and armed private security guard may intentionally or negligently shoot a citizen or that a robber threatening a citizen, whose "safety" the guard is responsible for guarding or protecting, might intentionally shoot a citizen. In either instance, where legal responsibility might attach because of particular circumstances, to allow the required liability policy to exclude "assault and battery" coverage would defeat the purpose of requiring such insurance of the licensed security guard who fails in the responsibility.
29,221 at p. 8; 690 So.2d at 863. The intermediate court acknowledged the contrary holding in Jackson v. Rogers, 95-0486 (La. App. 1st Cir.11/9/95); 665 So.2d 440, but noted the Jackson opinion did not consider this stated legislative purpose of protecting public safety.
The protection of public safety is a prominent aspect of liability insurance in general. As the court noted in Sledge v. Continental Casualty Co., 25, 770 (La.App.2d Cir.6/24/94); 639 So.2d 805, Louisiana courts have recognized the public policy that liability insurance should protect innocent accident victims. That public policy has been cited as requiring certain coverage be included in every automobile liability policy.
In drawing an analogy to cases involving automobile liability insurance policies, the court of appeal in the present case stated:
From time to time courts of this state have similarly voided liability policy provisions that were in derogation of compulsory insurance laws in the context of automobile insurance coverage. The ultimate coverage of such compulsory insurance is dictated from time to time by the legislature. Statutes may impose coverage obligations on the insurer that are beyond the ordinary insurance agreement or contract in some specified circumstances. (citations omitted).
29,221 at pp. 8-9; 690 So.2d at 863. Based on that analogy, the court of appeal concluded that the assault and battery exclusion violates the legislative policy of the Private Security Regulatory and Licensing Act.
Analogizing public policy concerns in the context of mandatory automobile insurance to other contexts is an "uphill battle," although it may be "tempting" to do so. Lee R. Russ and Thomas F. Segall, 7 Couch on Insurance 3d § 101:18 (1997). We decline to apply that analogy in the context of the present case for two reasons.
First, as the court of appeal in Jackson stressed, neither La.Rev.Stat. 37:3276E of the Private Security Regulatory and Licensing Law nor the Louisiana Insurance Code (Title 22) require any particular form of general liability insurance policy. La.Rev.Stat. 37:3276E, in requiring "general liability insurance" to be provided by the "licensee," *425 does not mandate coverage of, or prohibit exclusion of, injuries resulting from assaults and batteries or from negligent hiring, training or supervision of security agents. Neither does the statute require that the insurer issue, or that the insured obtain, a policy with unrestricted or "all-risk" coverage. Moreover, La.Rev.Stat. 22:6(4) defines liability insurance simply as "[i]nsurance against the liability of the insured for the death, injury or disability of an employee or other person, and insurance against the liability of the insured for damage to or destruction of another person's property." Additionally, the Insurance Code expressly permits an insurer to impose limitations on its liability in the form of exclusions. La.Rev.Stat. 22:620.
Hence, unlike the automobile insurance and uninsured motorist statutes, the Private Security Regulatory and Licensing Law does not expressly mandate specific elements of liability coverage (such as omnibus coverage) that must be provided and does not impose any duties on the insurer. Rather, it merely mandates that the licensee maintain a minimal level of general liability coverage. There is no indication in the licensing law itself, in its stated purpose, or in its legislative history that the Legislature intended to require insurance coverage for security agents without the usual exclusions and restrictions.
Another significant impediment to the analogy drawn by the court of appeal between mandatory automobile insurance and the liability insurance coverage mandated for licensing private security agents is that the mandatory automobile insurance provisions are directed to insurance companies. On the other hand, the requirement of general liability insurance for the licensing of private security agents is expressly directed to the security agent.
Second, when the statutory enactment asserted as the basis of a public policy attack neither requires a certain element of coverage nor prohibits a certain exclusion, the operative question is "whether the language of the policy is `in harmony' with the enactment, requiring that the enactment's underlying goals and purposes be ascertained." Lee R. Russ and Thomas F. Segall, 7 Couch on Insurance 3d § 101:18 (1997).
As outlined above, the purpose and goal of the Act at issue in this case is to provide a detailed licensing scheme for the profession of private security agents in order to protect the public from "unqualified individuals [who] may injure the public" and to weed out such individuals. La.Rev.Stat. 37:3270. Plaintiff's attempt to utilize the protection of public safety, which is the broad purpose underlying the Act, as a basis for requiring coverage for injuries caused by assault and battery is a long leap.
The fact that the purpose of liability insurance, in general, is to protect the public, and not just the insured, does not mean that exclusions are not to be enforced. "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Louisiana Insurance Guarantee Association v. Interstate Fire, 93-0911 (1/14/94); 630 So.2d 759, 763.
As discussed above, the exclusion's purported conflict in this case is not with the express wording of the statute, but rather with the broadly stated public policy behind the Private Security Regulatory and Licensing Law of protecting the public from unqualified security agents. Although protecting the public from unqualified security agents is listed among the stated policies to be served by the Act, and although the Act mandates minimum liability coverage, and although we acknowledge that general liability policies "are issued primarily for the protection of the public rather than the insured [private security company], it is not the public policy of this state to protect and provide compensation to injured persons at all times." Hearty v. Harris, 574 So.2d 1234 (La.1991) (addressing automobile liability exclusions). Furthermore, the public policy expressed in La.Rev.Stat. 37:3270B emphasizes protection of the public from unqualified security agents, and the Act contains many provisions for promoting this objective, such as licensing and training. Only one provision relates to insurance coverage, and the only specification in that provision refers to the amount of coverage, and not to requirements *426 of specific coverages or to prohibitions of specific exclusions.
Additionally, Colony's commercial general liability policy, contrary to plaintiff's assertions, does provide extensive coverage for the acts and omissions of employees of a private security agent. There is coverage for an injury caused by a kidnapping, as in Ledbetter. There is coverage in many other situations.
Finally, the insured security agent could have requested coverage of assaults and batteries for an increased premium. There is no evidence that Ashley, on whom the statute placed the responsibility of obtaining general liability insurance coverage, made such a request to Colony or to Ashley's agent (an unjoined party against whom a breach of contract action may still lie if specific coverage was requested and not obtained).[3]
Hence, we conclude that public policy does not preclude the application of Colony's assault and battery exclusion so as to bar plaintiff's recovery. See also Michelet v. Scheuring Security Services, Inc., 95-2196 (La.App. 4th Cir.9/4/96); 680 So.2d 140, cert. denied, 96-2419 and 96-2429 (La.12/12/96); 692 So.2d 371, 372 (rejecting the public policy argument of the Board of Private Security Examiners and holding that "La. R.S. 37:3276E requires only `general liability insurance of at least one hundred thousand dollars'").

Decree
For the foregoing reasons, we reverse the decision of the court of appeal and reinstate the judgment of the trial court that granted a summary judgment to Colony Insurance Company.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting.
The majority has decided to ignore the expressly stated legislative purpose of protecting the public by requiring private security agencies to have general liability insurance coverage.
The statutory requirement for general liability coverage, La. R.S. 37:3270 et seq., expressly states that one of the legislative purposes of the Private Security Regulatory and Licensing Law is to assure some recovery for individuals injured as a result of legally liable private security agents or businesses. La. R.S. 37:3272(12), defines "security guard" as follows:
"Security guard" means an individual who is principally employed by a contract security company whether armed or unarmed, who is principally employed to protect a person or persons or property or both, and whose duties include but are not limited to the following:
(a) Prevention of unlawful intrusion or entry.
(b) Prevention of larceny.
(c) Prevention of vandalism.
(d) Protection of property or person.
(e) Prevention of abuse.
(f) Prevention of arson.
(g) Prevention of trespass on private property.
(h) Control, regulation, or direction of the flow or movements of the public, except on public streets, whether by vehicle, on foot, or otherwise.
(i) Street patrol service or merchant patrol service, which is any contract security company that utilizes foot patrols, motor vehicles, or any other means of transportation in public areas or on public thoroughfares in the performance of its security functions.
As defined by the statute, a security guard's duties include, among other things, protection of property or persons. The assault and battery exclusion, as written in this policy of insurance, excludes from coverage the security guard's actions and failures to act under nearly all circumstances, including his failure to provide an environment safe from assault and battery and the failure to warn of an unsafe environment. Such a provision conflicts, in my mind, with his duty of protection of persons. Therefore, I am of *427 the opinion that the exclusion conflicts with the duties of a security guard, as defined by statute. See La. R.S. 37:3272(12)(d). See also, Ledbetter, 665 So.2d at 1169, citing Reynolds, 634 So.2d at 1183.
The presence of an armed security guard in uniform at an establishment or location creates an expectation that such person will provide protection for individuals' safety. Under the assault and battery exclusion in this policy, the security guard could stand by and watch an altercation or robbery ensue or in progress, fail to act, yet be completely shielded from liability. The purpose of any compulsory insurance statute is primarily to provide compensation to innocent victims who suffer injuries. The majority asserts that, "the Private Security Regulatory and Licensing Law does not expressly mandate specific elements of liability coverage (such as omnibus coverage) that must be provided." It would be inconsistent for the state legislature to mandate general liability insurance coverage to protect the public and then allow insurers to deny, by exclusions in the policy, coverage for the very risk which they contracted to insure against. Strictly construing the assault and battery exclusion against the insurer, I find that the exclusion conflicts with the stated legislative policy of the Private Security Regulatory and Licensing Law.
The majority has chosen to overlook the legislative purpose and to put the safety, health, and well-being of the Louisiana citizenry at risk. For reasons expressed herein, I would hold that the assault and battery exclusion of the insurance policy in the present case is contrary to the legislative purpose of the Private Security Regulatory and Licensing Law, La. R.S. 37:3270 et seq., and I respectfully dissent.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] At the time of this accident, La.Rev.Stat. 37:3276E provided as follows:

The licensee shall be required to have in effect general liability insurance of at least one hundred thousand dollars with the state of Louisiana named as an additional insured and shall provide to the board a certificate of insurance issued by the carrier.
In 1997, the Legislature amended this provision to increase the required minimum coverage to five hundred thousand dollars.
[2] The assault and battery exclusion in the Ledbetter case provided:

Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of Assault and Battery, whether caused by or at the instigation of, the insured, his employees, patrons, or any causes whatsoever.
[3] The court of appeal placed on the insurer the responsibility of including coverage for assaults and batteries, while the statute only imposes on the insured the responsibility of obtaining general liability insurance.