MOON LANDRIEU, Judge Pro Tempore.
_]jThis is an insurance coverage dispute. The trial court granted the motion for summary judgment filed by the defendant, Essex Insurance Company (“Essex”). From that judgment, the plaintiff, Encompass Insurance Company (“Encompass”), appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On July 19, 2004, Morris Keil Moss entered into a contract with Gammon Roofing, L.L.C. (previously known as Gammon Enterprises, L.L.C.)(“Gammon Roofing”), through its president Stephen D. Gammon. The contract was to remove the existing flat roof on Mr. Moss’s home located at 122 Fairway Drive in New Orleans and to install a new roofing system on the home. As part of the contract, Gammon Roofing agreed to remove and to install the roofing in a workmanlike manner, and it represented that it was “fully insured.”
On July 28, 2004, Gammon Roofing began work removing the original roof from Mr. Moss’s home using propane torches. On that same day, Mr. Moss’s residence was damaged by a fire. An investigation revealed that the fire was caused when the propane torch ignited the roof area, flashing, or both, causing a |2smoIdering fire subsequently to erupt and fully engulf the home.[1] Seeking indemnification and reimbursement for damages to his home resulting from the fire, Mr. Moss filed a claim with his homeowners’ insurer, Encompass. Pursuant to the homeowners’ policy, Encompass paid Mr. Moss $502,860.05.
On July 22, 2005, Encompass, as Mr. Moss’s subrogee, commenced this suit seeking to recover the monies it paid to its insured, Mr. Moss. Named as defendants were Gammon Roofing, Mr. Gammon, and Essex. In its petition, Encompass averred that Gammon Roofing was negligent in its use of propane torches to remove the old roof and that it breached the contract when it failed to remove, install, repair, and otherwise complete the work in a workmanlike manner according to standard practices, and when it failed to obtain full insurance for work completed at the home.
Essex answered the suit asserting various policy exclusions precluded coverage. In particular, Essex cited the Roofing Exclusion, which, in pertinent part, provides:
The coverage under this policy does not apply to “bodily injury,” “property damage,” “personal injury,” “advertising injury,” or any injury, loss, or damage arising out of:
⅛ ;¡s ⅝ ⅝
8. Any operations involving any hot tar, wand, open flame, torch or heat *18 applications, or membrane roofing;[2]
|3Essex also filed a motion for summary-judgment asserting the same policy exclusions precluded coverage. In support of its motion for summary judgment Essex submitted an affidavit of one of its claims examiners, who attested that the copy of the policy attached to her affidavit was a correct and complete copy of the commercial general liability policy issued to Gammon Roofing for the period March 14, 2004 to March 14, 2005. Essex argued that the unambiguous language of the Roofing Exclusion, which precludes coverage of “any operations involving ... torch or heat applications,” coupled with the allegations of the petition, which alleges that the fire occurred as a result of the Gammon Roofing’s employee’s use of a propane torch, precluded coverage as a matter of law. Agreeing with Essex, the trial court found that “the exclusion is not ambiguous and as such, serves to bar recovery under the policy.” The trial court thus granted Essex’s motion for summary judgment.[3] This appeal by Encompass followed.
DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Favored in Louisiana, the summary judgment |4procedure is designed to secure the just, speedy, and inexpensive determination of every action, and should be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).
“When ... a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.” Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 749-750 (citations omitted). However, a summary judgment declaring no coverage under an insurance policy may not be rendered unless “there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.” Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183 (citations omitted).
In Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, the Louisiana Supreme Court outlined the following elementary principles for interpreting insurance policies:
*19 • An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent.
• The parties’ intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.
• An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their |BIiability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
• Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.
• If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured.
• Yet, if the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. The determination of whether a contract is clear or ambiguous is a question of law.
Interstate Fire, 630 So.2d at 763-64 (internal citations omitted). Simply because an insurance policy is a complex legal instrument requiring analysis does not automatically render the policy ambiguous. Id. at 766.[4]
With these principles in mind, we address the issue presented of whether the trial court correctly found that no coverage existed for the damages caused by the fire as a matter of law. On appeal, Encompass contends that the trial court’s decision is erroneous for two reasons.
1 fiFirst, Encompass contends, as it did in the trial court,[5] that the Roofing Exclusion *20 does not represent the intent of the parties and thus violates public policy. Encompass points out that Mr. Gammon’s actions in representing to Mr. Moss in connection with the roofing contract that Gammon Roofing was “fully insured” evidences his belief that the policy covered any and all work performed in his roofing business, including the torch work. Encompass argues that the use of a torch in roof repair is necessary and foreseeable and that an insurance policy that fails to cover such ordinary actions is illusory and offers no protections. Although Encompass does not debate the authenticity of the Roofing Exclusion, it asserts that Gammon Roofing would not have purchased the policy and paid a substantial premium ($30,450.00) if it knew the impact of the exclusion.
Second, Encompass contends that the policy is ambiguous because two of the endorsements to the policy are conflicting. It contends the Roofing Exclusion (which is included in the Roofing Endorsement), quoted above, conflicts with the Classification Limitation Endorsement, quoted below:
CLASSIFICATION LIMITATION ENDORSEMENT — The coverage provided by this policy applies only to those operations specified in the application for insurance on file with the company and described under the “description” or classification of the declarations of the policy.
|7According to Encompass, during the application process for the original policy, which was issued on March 14, 2003, Gammon Roofing alerted Essex to its use of torches in the course of its roofing business.[6] According to Encompass, nothing within the application process gave Gammon Roofing any indication that torch work would not be a covered activity. Rather, the first time that Gammon Roofing did not have coverage for this aspect of its roofing activities was when the Roofing Exclusion was added to the renewal policy, which was issued on March 14, 2004. Encompass further argues that, at a minimum, the Classification Limitation Endorsement provides coverage for roofing and the Roofing Exclusion excludes coverage for roofing, making the policy language ambiguous. See Orleans Parish School Bd. v. Scheyd, Inc., 95-2653, p. 10 (La.App. 4 Cir. 4/24/96), 673 So.2d 274, 279 (stating that “[i]t would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage.”)
Essex counters that simply because Gammon Roofing admitted in its application that it performed a small amount of torch work does not mean that such activity is covered under the policy pursuant to the Classification Limitation Endorsement. To the contrary, it contends that the Classification Limitation Endorsement, by its terms, provides that the coverage under the policy applies to those operations both listed in the application for insurance and described on the application page. The declaration page set forth the description of the type of work performed by Gammon *21 Roofing as “ROOFING — RESIDENTIAL.” According to Essex, because the Roofing Exclusion specifically precludes coverage for the type |sof activity — torch work — that caused the fire, there is no coverage under the policy.
We find, as did the trial court, that there is no ambiguity in the policy and that the Roofing Exclusion precludes recovery under the policy. Insurance companies are not required to issue CGL policies with unrestricted or “all-risk” coverage. See Hickey v. Centenary Oyster House, 97-1074 p. 8 (La.10/20/98), 719 So.2d 421, 424-25 (addressing requirement of a private security guard to maintain “general liability insurance”). Indeed, the Louisiana Insurance Code expressly sanctions the imposition of limitations on liability in the form of exclusions from coverage. R.S. 22:620 A(4)(providing that “[a]ny insurer may insert in its policies any provision or conditions required by its plan of insurance or method of operation which are not prohibited by this Code.”) As noted, the Essex CGL policy at issue contains a Roofing Exclusion. A Roofing Exclusion, as Essex points out, is a narrow exclusion from coverage of a particular type of activity. A Roofing Exclusion is intended to eliminate a fire risk, which is evidenced by the use in the exclusion of “a series of words all pertaining to a fire risk due to a hot material (e.g., ‘hot tar,’ ‘wand,’ ‘open flame,’ and ‘torch or heat applications’).” Philip L. Bruner and Patrick J. O’Connor, Jr., 4 Bruner & O’Connor Construction Law § 11:12.20 (2008). We thus find, as did the trial court, that the Roofing Exclusion unambiguously precludes coverage for the damages at issue in this case allegedly caused by the use of a torch in the roofing of Mr. Moss’s home.[7]
| flDECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The only statement of the facts concerning the fire that was before the trial court on the motion for summary judgment is contained in Encompass's petition.

. Essex further relied upon a Breach of Contract Exclusion, which provides:
This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury,” "property damage,” "advertising injury,” "personal injury” or an "occurrence” or damages of any type is alleged; Essex still further relied upon a Work Product Exclusion. The trial court, however, based its decision solely on the Roofing Exclusion.

. Although the trial court in its judgment stated that the judgment was final for purposes of appeal, a judgment dismissing a party is a final judgment as a matter of law under La. C.C.P. art. 1915 A(1).

. The anti-technical statute, La. R.S. 22:692, and the jurisprudence construing that statute, Rodriguez v. Northwestern Nat'l Ins. Co., 358 So.2d 1237, 1240 (La.1978), which Encompass cites, indicate that the statute applies to fire losses covered by a policy of insurance covering losses due to fire. The statute, by its terms, applies to a "policy of fire insurance issued by any insurer on property in this state.” La. R.S. 22:692. As Essex points out, although this case involves damages caused by a fire, the CGL policy that Essex issued to Gammon Roofing does not provide the type of fire coverage to which the statute was intended to apply. See Graham v. Milky Way Barge, Inc., 824 F.2d 376 (5th Cir.1987)(deriving from La. R.S. 22:691(F) a definition of fire loss in this context to mean a "DIRECT LOSS BY FIRE ... INSURED AGAINST IN THIS POLICY”).

. The trial court in its reasons for judgment summarized Encompass’s arguments in opposing the summary judgment as follows:
Encompass argues that the roofing exclusion issued in the Essex policy violates public policy because it is frivolous and does not represent the intent of both parties. Encompass further argues that an insurance policy that restricts the ordinary and foreseeable actions for the business which it *20 insures evidences a clear lack of understanding by the parties. Encompass does not debate the authenticity of the exclusion but instead asserts that Gammon would not have purchased such a policy and paid a premium of $30,450.00 if it knew the impact of the exclusion.
As noted, Encompass asserts these same arguments on appeal.

. In answering a "Roofing Contractors Supplemental Questionnaire," Gammon Roofing responded affirmatively to the question of whether it installs roofing systems that require use of setting fire (torch work) to asphalt for application of roofing materials.

. Given our finding that the Roofing Exclusion applies and precludes coverage, we, like the trial court, do not reach the other exclusions cited by Essex.